**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FEDERAL INSURANCE COMPANY,

Plaintiff,

v.

JIM TALLIAN, an individual; TJ MORROW, an individual; DANIEL ALVARADO, an individual; MANUEL LEWIS; an individual; RICHARD FARR, an individual; TONY JOHNSON, an individual; JEFFREY MARLIN, an individual; PATRICIA MASTERSON, an individual; MILDA PRANINSKAS, an individual; ESMEE JOHANNES, an individual; SHEILA ALECKSON, an individual; ANDREA SHAFFER, an individual; LESLIE FULLERTON and NICOLA FULLERTON, individually and as representatives of the Estate of Natalie Fullerton; KATIE ABRAMS, an individual; LEONARD OLLEARIS, an individual; HOME INFUSION SOLUTIONS., INC., a corporation; HDM, d/b/a HOME INFUSION SOLUTIONS, INC., a corporation; RUSH HOME INFUSION SOLUTIONS, a corporation; HEALTH DELIVERY MANAGEMENT, LLC, d/b/a HDM, a limited liability company; SIERRA PREFILLED, INC., a corporation; RUSH UNIVERSITY MEDICAL CENTER, a corporation; AM2PAT, INC., a corporation d/b/a Salient Health Care, Inc.; DORIS WICKMAN, M.D., an individual; DIMITRE BARDE, an individual; RICHARD HOLLIDAY, an individual; DONALD RITCHEY, an individual; LILY SHEEHAN and JAMES SHEEHAN, as parents and next friends of Caden Sheehan, a minor; LOREN PETER, an individual; HOWARD CAMPBELL, as personal representative of the Estate of Helen R. Campbell; AMBIENT HEALTHCARE, INC., a corporation; AMBIENT HEALTHCARE OF WEST FLORIDA, a corporation; KYLE PACHEO, an individual; GEORGE EDWARD TANGUAY, JR., an individual; and DOES 1-50.

Defendants.

Civil Action

Case No.

FILED: AUGUST 21, 2008
08CV4779
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER
BR

**COMPLAINT FOR STATUTORY INTERPLEADER RELIEF**

NOW COMES the Plaintiff, Federal Insurance Company (hereinafter "Federal"), by and through its undersigned counsel, Judith Fournie Helms, Jennifer Jerit Johnson, and Colleen M. Costello at Tressler, Soderstrom, Maloney & Priess, L.L.P., for its Complaint for Statutory Interpleader Relief pursuant to 28 U.S.C. § 1335, states as follows:

**GENERAL ALLEGATIONS**

1. On January 25, 2008, the United States Food and Drug Administration issued a Class One recall as to certain heparin and saline lock-flush syringes that Am2Pat, Inc. ("Am2Pat") manufactured because of an alleged *Serratia Marcescens* bacterial contamination in one of the lots (hereinafter referred to as the "contaminated syringes").

2. The above-referenced Defendants include those who have filed lawsuits or made claims against Am2Pat, alleging that the contaminated syringes resulted in either serious bodily injury or death. Other Defendants named above have an arguable stake in the outcome of the money available to pay such claims, such as lien holders or co-defendants in related personal injury litigation.

3. Upon information and belief, Am2Pat does not have any corporate assets from which it can pay the claims for bodily injury that have allegedly arisen from the contaminated syringes. Further, no insurance policies, other than the policy described below, provide coverage for the contaminated syringe claims or suits.

4. Federal issued a liability claims-made policy to Am2Pat, Inc. d/b/a Salient Health Care, Inc., effective policy period April 10, 2007 to April 10, 2008, which provides coverage for "bodily injury" included in the "products-completed operations hazard" ("Federal policy"). A certified copy of the Federal policy is attached hereto as Exhibit A.

5. The Federal policy contains a $2,000,000 each occurrence limit and a $2,000,000 products/completed operations aggregate limit. In addition, the coverage provided by the Federal policy is claims-made. Further, the defense costs and expenses provided to Am2Pat to defend claims and suits reduce the policy limits. Thus, all defense costs and expenses that are expended in defending the contaminated syringe claims and suits will reduce the Limits of Insurance available for payment of judgments or settlements.

6. Because the defense of the contaminated syringe claims reduces the limits of the Federal policy, and given the large number of claimants and the serious nature of the claims, including two wrongful death claims, it appears that the value of these claims and suits and defense costs and expenses exceed the available limits. Therefore, Federal brings this action to compel Defendants to interplead their claims against Am2Pat, and requests that this court equitably divide the available policy limits among the Defendants and grant the other relief requested in this complaint.

**DEFENDANTS**

7. Federal repeats paragraphs 1 through 6 above and incorporates them herein and by reference.

8. Defendant Jim Tallian is an Illinois resident who filed suit against Am2Pat, among others, in the Circuit Court of Cook County, Illinois, court number 2008 L 000549. Defendant Jim Tallian seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Jim Tallian has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

9. Defendant TJ Morrow is an Illinois resident who filed suit against Am2Pat, among others, in the Circuit Court of Cook County, Illinois, court number 2008 L 000549.

Defendant TJ Morrow seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant TJ Morrow has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

10.    Defendant Daniel Alvarado is an Illinois resident who filed suit against Am2Pat, among others, in the Circuit Court of Cook County, Illinois, court number 2008 L 000549. Defendant Daniel Alvarado seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Daniel Alvarado has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

11.    Defendant Manuel Lewis is an Illinois resident who is making a claim against Am2Pat for bodily injury that he allegedly suffered from contaminated syringes. Upon information and belief, Defendant Manuel Lewis has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

12.    Defendant Richard Farr is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 000857. Defendant Richard Farr seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Richard Farr has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

13.    Defendant Tony Johnson is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 000857. Defendant Tony Johnson seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Tony Johnson has a claim to the

Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

14. Defendant Jeffrey Marlin is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 000857. Defendant Jeffrey Marlin seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Jeffrey Marlin has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

15. Defendant Patricia Masterson is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 000857. Defendant Patricia Masterson seeks damages from Am2Pat for bodily injury that she allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Patricia Masterson has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

16. Defendant Milda Praninskas is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 000857. Defendant Milda Praninskas seeks damages from Am2Pat for bodily injury that she allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Milda Praninskas has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

17. Defendant Esmee Johannes is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, 2008 L 003845. Defendant Esmee Johannes seeks damages from Am2Pat for bodily injury that she allegedly suffered from the contaminated

syringes. Upon information and belief, Defendant Esmee Johannes has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

18.    Defendant Sheila Aleckson is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois. Defendant Sheila Aleckson seeks damages from Am2Pat for bodily injury that she allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Sheila Aleckson has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

19.    Upon information and belief, Defendant Andrea Shaffer is a Florida resident who is making a claim against Am2Pat for bodily injury that she allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Andrea Shaffer has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

20.    Upon information and belief, Defendants Leslie Fullerton and Nicola Fullerton, Individually and as Representatives of the Estate of Natalie Fullerton, are Texas residents who are making a claim against Am2Pat for bodily injury and wrongful death that Natalie Fullerton allegedly suffered from the contaminated syringes. Upon information and belief, Defendants have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

21.    Defendant Katie Abrams is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2007 L 014278. Defendant Katie Abrams seeks damages from Am2Pat for bodily injury that she allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Katie Abrams has a claim to the

Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

22.     Upon information and belief, Defendant Leonard Ollearis is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2007 L 014134.  Defendant Leonard Ollearis seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes.  Upon information and belief, Defendant Leonard Ollearis has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

23.     Upon information and belief, Defendant Doris Wickman, M.D. is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 3117.  Defendant Doris Wickman, M.D. seeks damages from Am2Pat for bodily injury that she allegedly suffered from the contaminated syringes.  Upon information and belief, Defendant Doris Wickman, M.D. has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

24.     Upon information and belief, Defendant Dimitre Barde is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 003356.  Defendant Dimitre Barde seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes.  Upon information and belief, Defendant Dimitre Barde has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

25.     Upon information and belief, Defendant Richard Holliday is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 004163.  Defendant Richard Holliday seeks damages from Am2Pat for bodily injury that he

allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Richard Holliday has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

26.    Upon information and belief, Defendant Donald Ritchey is an Illinois resident who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 004163. Defendant Donald Ritchey seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Donald Ritchey has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

27.    Upon information and belief, Defendants Lily Sheehan and James Sheehan, as parents and next friends of Caden Sheehan, a minor, are Illinois residents who filed suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 004163. Defendants Lily Sheehan and James Sheehan, as parents and next friends of Caden Sheehan, a minor, seek damages from Am2Pat for bodily injury that Caden Sheehan allegedly suffered from the contaminated syringes. Upon information and belief, Defendants Lily Sheehan and James Sheehan, as parents and next friends of Caden Sheehan, a minor, have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

28.    Upon information and belief, Defendant Loren Peter is an Illinois resident who filed a petition for discovery suit against Am2Pat in the Circuit Court of Cook County, Illinois, court number 2008 L 7014. Defendant Loren Peter seeks discovery from Am2Pat regarding bodily injury that he allegedly incurred from a Serratia Marcescens bacterial infection. Upon information and belief, Defendant Loren Peter has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

29. Upon information and belief, Defendant Howard Campbell, as personal representative to the Estate of Helen R. Campbell, is a Florida resident who filed suit against Am2Pat in Escambia County, Florida, court number 08 CA 1048. Defendant Howard Campbell, as personal representative of the Estate of Helen R. Campbell seeks damages from Am2Pat for bodily injury and wrongful death that Helen R. Campbell allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Howard Campbell, as personal representative of the Estate of Helen R. Campbell, has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

30. Upon information and belief, Defendant Kyle Pacheo is a Florida resident. Defendant Kyle Pacheo seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant Kyle Pacheo has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

31. Upon information and belief, Defendant George Edward Tanguay, Jr. is a Florida resident. Defendant George Edward Tanguay, Jr. seeks damages from Am2Pat for bodily injury that he allegedly suffered from the contaminated syringes. Upon information and belief, Defendant George Edward Tanguay, Jr. has a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

32. Defendant Home Infusion Solutions, Inc. is Am2Pat's co-defendant in the case captioned *Tallian, et al. v. Home Infusion Solutions, Inc.*, et al., 2008 L 000549, filed in the Circuit Court of Cook County, Illinois and upon information and belief, its principal place of business is in Oak Park, Illinois. Upon information and belief, Defendant Home Infusion

Solutions, Inc. may have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

33.    Defendant HDM d/b/a Home Infusion Solutions, Inc., is Am2Pat's co-defendant in the case captioned *Tallian, et al. v. Home Infusion Solutions, Inc., et al.*, 2008 L 000549, filed in the Circuit Court of Cook County, Illinois and upon information and belief, its principal place of business is in Oak Park, Illinois.  Upon information and belief, Defendant HDM d/b/a Home Infusion Solutions, Inc. may have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

34.    Defendant Rush Home Infusion Solutions is Am2Pat's co-defendant in the case captioned *Tallian, et al. v. Home Infusion Solutions, Inc.*, et al., 2008 L 000549, filed in the Circuit Court of Cook County, Illinois and upon information and belief, its principal place of business is in Oak Park, Illinois.  Upon information and belief, Defendant Rush Home Infusion Solutions may have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

35.    Defendant Health Delivery Management, LLC d/b/a HDM is Am2Pat's co-defendant in the case captioned *Tallian, et al. v. Home Infusion Solutions, Inc., et al.*, 2008 L 000549, filed in the Circuit Court of Cook County, Illinois and upon information and belief, its principal place of business is in Chicago, Illinois.  Upon information and belief, Defendant Health Delivery Management, LLC d/b/a HDM may have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

36.    Defendant Sierra Pre-filled, Inc. is either Am2Pat's co-defendant or it is alleged that Am2Pat is doing business as Sierra Pre-Filled, Inc. in the cases captioned *Tallian, et al. v. Home Infusion Solutions, Inc., et al.*, 2008 L 000549, filed in the Circuit Court of Cook County,

Illinois; *Farr, et al. v. Am2Pat, Inc.*, d/b/a Sierra Pre-Filled, Inc., 2008 L 000857, filed in the Circuit Court of Cook County, Illinois; *Abrams v. Am2Pat, Inc. d/b/a Sierra Pre-Filled*, 2007 L 014278, filed in the Circuit Court of Cook County, Illinois; *Ollearis v. Am2Pat, Inc. d/b/a Sierra Pre-Filled*, 2007 L 014134, filed in the Circuit Court of Cook County, Illinois; *Wickman v. Am2Pat, Inc.*, 2008 L 003117, filed in the Circuit Court of Cook County, Illinois; *Barde v. Am2Pat, Inc.*, 2008 L 003356, filed in the Circuit Court of Cook County, Illinois; *Holliday, et al. v. Am2Pat, Inc.*, 2008 L 004163, filed in the Circuit Court of Cook County, Illinois; *Campbell v. Am2Pat, et al.*, 2008 CA 001048, filed in the Circuit Court for Escambia County, Florida; and *Peter v. Rush University Medical Center*, 2008 L 007014, filed in the Circuit Court of Cook County, Illinois. Upon information and belief, Defendant Sierra Pre-Filled, Inc. may have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

37.    Defendant Rush University Medical Center is Am2Pat's co-defendant or respondent in discovery in the cases captioned *Tallian, et al. v. Home Infusion Solutions, Inc., et al.*, 2008 L 000549, filed in the Circuit Court of Cook County, Illinois; *Johannes v. Am2Pat, Inc., et al.*, 2008 L 003845, filed in the Circuit Court of Cook County, Illinois; *Aleckson v. Am2Pat, Inc., et al.*, 2008 L 001248, filed in the Circuit Court of Cook County, Illinois; and *Peter v. Rush University Medical Center*, 2008 L 007014, filed in the Circuit Court of Cook County, Illinois. Upon information and belief, Defendant Rush University Medical Center is an Illinois corporation with its principal place of business in Cook County, Illinois.

38.    Defendant Ambient Healthcare, Inc. is Am2Pat's co-defendant in *Campbell, et al. v. Am2Pat, Inc.*, 2008 CA 001048, filed in the Circuit Court for Escambia County, Florida.

Upon information and belief, Defendant Ambient Healthcare, Inc. is a Florida corporation within its principal place of business in Florida.

39. Defendant Ambient Healthcare of West Florida, Inc. is Am2Pat's co- defendant in *Campbell, et al. v. Am2Pat, Inc.*, 2008 CA 001048, filed in the Circuit Court for Escambia County, Florida. Upon information and belief, Defendant Ambient Healthcare of West Florida, Inc. is a Florida corporation within its principal place of business in Florida.

40. Defendant Am2Pat is named as a nominal defendant in this action, due to its status as the named insured to the Federal policy.

41. Upon information and belief, Defendants Does 1-50 seek damages from Am2Pat for bodily injury that they allegedly suffered from the contaminated syringes, or have an arguable stake in the outcome of the money available to pay such claims, such as lien holders or co-defendants in related personal injury litigation. Upon information and belief, Does 1-50 have a claim to the Federal policy funds described above that are conflicting with the claims of the other Defendants herein.

**JURISDICTION**

42. Federal repeats paragraphs 1 through 41 above and incorporates them herein and by reference.

43. This is an action arising under the provisions of the Federal Interpleader Act, Title 28, United States Code, Sections 1335, 1397 and 2361, to compel all of the Interpleader Defendants to interplead their claims and to enjoin Defendants from prosecuting their claims and suits against Am2Pat that affect the available Federal policy limits.

44. The Plaintiff Federal is an Indiana Corporation, with its principal place of business in New Jersey.

45. Jurisdiction is conferred on this court under 28 U.S.C. Section 1335, since two or more of the adverse claimants to the stake (insurance policy proceeds of Federal's policy) are of diverse citizenship, and the amount at issue exceeds $500.

**VENUE**

46. Federal repeats paragraphs 1 through 45 above and incorporates them herein and by reference.

47. Venue is appropriate in the United States District Court, Northern District of Illinois, because at least one of the adverse claimant Defendants is a citizen of this judicial district under 28 U.S.C. Section 1397.

**CAUSE OF ACTION FOR INTERPLEADER**

48. Federal repeats paragraphs 1 through 47 above and incorporates them herein and by reference.

49. As described above, numerous suits and claims have been brought against Am2Pat, the defense of which erode the available Federal policy limits. There are a large number of claims, including claims for serious injuries and deaths. In addition, Federal believes that numerous other suits and/or claims may be filed against Am2Pat.

50. Upon information and belief, the total amount of the Defendants' claims and defense costs and expenses, will exceed the available Federal policy limits.

51. Upon information and belief, the Defendants have made multiple and conflicting claims against Am2Pat, who has no assets to pay the contaminated syringe claims other than the available Federal policy limits.

52. Unless the multiple Defendants to this action are enjoined from prosecuting or filing individual suits against Am2Pat, the available Federal policy limits will be eroded and

Federal will be unable to safely determine the value of each claim or lawsuit without great hazard to itself and the adverse Defendants.

53. This matter therefore falls within the purview of 28 U.S.C. Section 2361 which provides this court with express process over all of the Defendants and further allows this court to enter an order restraining the Defendants from instituting or prosecuting any proceeding in any State or United States court that affects the available Federal policy limits.

54. Federal requests instructions from this court in order to deposit into the registry of this court a bond in an amount less than $2,000,000, which represents the Limits of Insurance for the Federal policy, after subtracting the amounts that have previously been expended in the defense of Am2Pat and which are estimated to be expended until this court resolves this Interpleader action and/or dismisses Am2Pat and Federal from the necessity of participating in this Interpleader action and the defense of claims and suits.

WHEREFORE, the Interpleader Plaintiff, Federal Insurance Company, prays that:

1. This Court enter an Order requiring these multiple Defendants to interplead and settle among themselves their respective rights and claims, up to the available Limits of Insurance under the Federal policy, minus the defense costs and expenses incurred to date and to be incurred in the future.

2. This Court enter an Order discharging with prejudice plaintiff Federal Insurance Company and its insured, defendant Am2Pat, Inc., from all liability to any person or entity in connection with contaminated syringes and the payment of claims under the Federal policy.

3. This Court enter an Order enjoining and restraining each of the known Defendants and future claimants from further prosecuting or instituting any actions against Am2Pat on their respective or anticipated claims. (The court numbers and jurisdictions for each of the known

suits filed to date are: *Tallian, et al. v. Home Infusion Solutions, Inc., et al.*, 2008 L 000549, filed in the Circuit Court of Cook County, Illinois; *Farr, et al. v. Am2Pat, Inc. d/b/a Sierra Pre-Filled, Inc.*, 2008 L 000857, filed in the Circuit Court of Cook County, Illinois; *Abrams v. Am2Pat, Inc. d/b/a Sierra Pre-Filled*, 2007 L 014278, filed in the Circuit Court of Cook County, Illinois; *Ollearis v. Am2Pat, Inc. d/b/a Sierra Pre-Filled*, 2007 L 014134, filed in the Circuit Court of Cook County, Illinois; *Johannes v. Am2Pat, Inc., et al.*, 2008 L 003845, filed in the Circuit Court of Cook County, Illinois; *Aleckson v. Am2Pat, Inc.*, 2008 L 001248, filed in the Circuit Court of Cook County, Illinois; *Wickman v. Am2Pat, Inc.*, 2008 L 003117, filed in the Circuit Court of Cook County, Illinois; *Barde v. Am2Pat, Inc.*, 2008 L 003356, filed in the Circuit Court of Cook County, Illinois; *Holliday, et al. v. Am2Pat, Inc.*, 2008 L 004163, filed in the Circuit Court of Cook County, Illinois; *Peter v. Rush University Medical Center, et al.*, 2008 L 007014, filed in the Circuit Court of Cook County, Illinois; *Campbell v. Am2Pat, Inc.*, 2008 CA 001048, filed in the Circuit Court for Escambia County, Florida.

4.    This Court enter an Order setting forth a global list of all claimants potentially entitled to share in the Federal policy limits, and enter an order ruling that no other claimants have a stake in such a policy.

5.    This Court enter an Order instructing Federal and Am2Pat's defense counsel to provide to the Court an accounting of all Am2Pat's defense costs and expenses incurred to date, including work in progress, and also including an estimate of all necessary future Am2Pat defense costs and expenses until such time as this Interpleader matter discharges all liability of Am2Pat in the Interpleader matter and in all other claims and suits.

6.    This court enter an Order, based on the above accounting, instructing Federal to deposit into the registry of this Court an appropriate bond in an amount less than $2,000,000,

accounting for erosion of the insurance policy limits due to past and estimated future defense costs and expenses.

7. This Court enter an Order finding that Federal and Am2Pat need not further appear in court in this Interpleader matter and all other civil suits because defense costs and expenses erode the Federal policy limits and funds available to all claimants.

8. This Court enter an Order that all allocations of money pursuant to this Court's power in this Interpleader to resolve claims are made in good faith pursuant to the Illinois Contribution Act and/or all other appropriate statutes.

9. This Court grant such further relief that this court deems just and proper.

Dated this 20th day of August, 2008.

By:__________/s/Jennifer J. Johnson________
One of the Attorneys for Plaintiff

Judith Fournie Helms
Jennifer Jerit Johnson
Colleen M. Costello
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000
331807

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FEDERAL INSURANCE COMPANY,

Plaintiff,

v.

JIM TALLIAN, an individual; TJ MORROW, an individual; DANIEL ALVARADO, an individual; MANUEL LEWIS; an individual; RICHARD FARR, an individual; TONY JOHNSON, an individual; JEFFREY MARLIN, an individual; PATRICIA MASTERSON, an individual; MILDA PRANINSKAS, an individual; ESMEE JOHANNES, an individual; SHEILA ALECKSON, an individual; ANDREA SHAFFER, an individual; LESLIE FULLERTON and NICOLA FULLERTON, individually and as representatives of the Estate of Natalie Fullerton; KATIE ABRAMS, an individual; LEONARD OLLEARIS, an individual; HOME INFUSION SOLUTIONS., INC., a corporation; HDM, d/b/a HOME INFUSION SOLUTIONS, INC., a corporation; RUSH HOME INFUSION SOLUTIONS, a corporation; HEALTH DELIVERY MANAGEMENT, LLC, d/b/a HDM, a limited liability company; SIERRA PREFILLED, INC., a corporation; RUSH UNIVERSITY MEDICAL CENTER, a corporation; AM2PAT, INC., a corporation d/b/a Salient Health Care, Inc.; DORIS WICKMAN, M.D., an individual; DIMITRE BARDE, an individual; RICHARD HOLLIDAY, an individual; DONALD RITCHEY, an individual; LILY SHEEHAN and JAMES SHEEHAN, as parents and next friends of Caden Sheehan, a minor; LOREN PETER, an individual; HOWARD CAMPBELL, as personal representative of the Estate of Helen R. Campbell; AMBIENT HEALTHCARE, INC., a corporation; AMBIENT HEALTHCARE OF WEST FLORIDA, a corporation; KYLE PACHEO, an individual; GEORGE EDWARD TANGUAY, JR., an individual; and DOES 1-50.

Defendants.

Civil Action
Case No.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2008, I electronically filed an **Interpleader Complaint** with the Clerk of Court using the CM/ECF system.

By: /s/Jennifer Jerit Johnson
One of the Attorneys for Plaintiff

Judith Fournie Helms
Jennifer Jerit Johnson
Colleen M. Costello
Attorneys for Plaintiff Federal Insurance Company
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000

08CV4779
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER
BR

# Exhibit A
# Part 1



***Customarq Series***
***Life Sciences Insurance Program***

# *Premium Bill*

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

**Portion of total premium attributable for terrorism and statutory standard fire where applicable is $ 201.00**

PLEASE SEND PAYMENT TO AGENT OR BROKER.

PCO - RENEWAL 07/08

| *Date Payment Due* | *Premium* |
|---|---|
| APRIL 10, 2007 | $ 20,326.00 |
| *TOTAL* | $ 20,326.00 |

WHEN SENDING PAYMENT, PLEASE INDICATE POLICY NUMBER ON YOUR CHECK.

NOTE: PLEASE RETURN THIS BILL WITH PAYMENT AND INCLUDE ANY ADDITIONAL CHANGES.

Producer:
TRISURE CORPORATION
4325 LAKE BOONE TR #200
RALEIGH, NC 27607-0000

*last page*





**Customarq Series**

## Important Notice - Defense Within Limits

The Limits Of Insurance provided under your policy include attorney fees, investigation costs and other costs to defend claims. Accordingly, payments we make for such costs and expenses will reduce the Limits Of Insurance available for the payment of judgments or settlements. Please read your policy carefully.





CHUBB

# IMPORTANT NOTICE TO POLICYHOLDERS

# TERRORISM RISK INSURANCE ACT OF 2002

This Important Notice is being provided with your policy to further satisfy the disclosure requirements of the Terrorism Risk Insurance Act of 2002 ("TRIA").

At the time you received the written offer for this policy, we provided you with an Important Notice to Policyholders indicating that the insurance provided in your policy for losses caused by certain acts of terrorism (as defined in TRIA) would be partially reimbursed by the United States of America, pursuant to the formula set forth in TRIA. In addition, as required by TRIA, we:

- indicated that we would make available insurance for such losses in the same manner as we provide insurance for other types of losses;
- specified the premium we would charge, if any, for providing such insurance; and
- except to the extent prohibited by law, gave you the opportunity to reject such insurance and have a terrorism exclusion, sublimit or other limitation included in your policy.

This Important Notice refers back to that Important Notice and provides information about your decision and the manner in which your policy has been subsequently modified.

If:

- You rejected terrorism insurance under TRIA, your policy includes the appropriate amendatory endorsement(s).
- You did not reject terrorism insurance under TRIA, the premium charged for your policy, including that portion applicable to terrorism insurance under TRIA, is shown in your policy. To the extent your policy includes a limitation on terrorism insurance, it has been modified so that such limitation does not apply to terrorism insurance under TRIA.

Please carefully review your policy and the Important Notice previously provided to you for further details. Please remember that only the terms of your policy establish the scope of your insurance protection.

**Please note that if your policy:**

- ***provides commercial property insurance in a jurisdiction that has a statutory standard fire policy, the premium we charge for terrorism insurance under TRIA, includes an amount attributable to the insurance provided pursuant to that standard fire policy. Rejection of such statutory insurance is legally prohibited.***
- ***is a workers compensation policy, rejection of insurance for terrorism is legally prohibited.***



# Life Sciences Insurance Program

# FOR

# AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C.

Producer:

TRISURE CORPORATION
4325 LAKE BOONE TR #200
RALEIGH, NC 27607-0000

Chubb Servicing Office:

RALEIGH
2000 REGENCY PARKWAY
SUITE 215
CARY, NC 27518



## How To Report A Loss

To report a **Loss**, use the following procedure.

### Loss Notification

If an **Insured Person** has a **Loss**, please contact us by telephone as soon as possible for further assistance:

Telephone Number: 1-800-252-4670

24 hours a day, 7 days a week

### Fax Number

You may also fax the loss report during normal business hours to:

Fax Number: 1-800-300-2538

### Mailing Address

You may mail your loss report to the following address:

Chubb Group Of Insurance Companies
Claim Service Center
600 Independence Parkway
P.O. Box 4700
Chesapeake, Va. 23327-4700





# Table Of Contents

This Table Of Contents is provided to acquaint you with the overall organization of this policy.

## POLICY ORGANIZATION

Insuring Agreement

Premium Summary

Liability Insurance Section

- Liability Schedule Of Forms & Declarations
- Liability Contracts *
- Liability Endorsements

Common Policy Section

- Common Policy Conditions
- Common Policy Endorsements

---

* Note: Each contract within a section has its own Table Of Contents to facilitate your use of them.





**Customarq Series**
**Life Sciences Insurance Program**

# Insuring Agreement

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C.
9400 RANSDELL RD., SUITE 5
RALEIGH, NC 27603

*Policy Number* 7020-67-90 RBO

*Effective Date* APRIL 10, 2007

*Issued by the stock insurance company indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Incorporated under the laws of INDIANA*

*Producer No.* 0026813

*Producer* TRISURE CORPORATION
4325 LAKE BOONE TR #200
RALEIGH, NC 27607-0000

## Company and Policy Period

Insurance is issued by the company in consideration of payment of the required premium.

This policy is issued for the period 12:01 AM standard time at the Named Insured's mailing address shown above:

From: APRIL 10, 2007 To: APRIL 10, 2008

Your acceptance of this policy terminates, effective with the inception of this policy, any prior policy of the same number issued to you by us.

This Insuring Agreement together with the Premium Summary, Schedule Of Forms, Declarations, Contracts, Endorsements and Common Policy Conditions comprise this policy. If this policy is a renewal, we have only reissued to you those policy documents containing changes from your previous policy period coverages and any new additional coverages or policy provisions. All other policy documents shown in the Schedule Of Forms accompanying this Insuring Agreement continue in effect.

In Witness Whereof, the company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the company.

FEDERAL INSURANCE COMPANY (incorporated under the laws of Indiana)

Thomas F. Motamed
*President*

W. Andrew Macan
*Secretary*

*Authorized Representative* Robert Hamburger



## *Important Notice - Claims Made Coverage*

If the Liability Insurance Schedule Of Forms states that any of the following forms comprise this policy, you should know that this policy provides claims-made coverage with defense within the limits. Please read your policy carefully. The following information is provided for your convenience but does not change the provisions of your policy:

- General Liability Claims Made*
- Premises/Operations Claims Made*
- Products/Completed Operations Claims Made*
- Liquor Liability Claims Made*
- Electronics Errors Or Omissions
- Computer Software And Services Errors or Omissions
- Damage To Your Electronic Products
- Metalworkers Errors Or Omissions
- Plasticworkers Errors Or Omissions
- Employee Benefits Errors Or Omissions
- Interior Designers Errors Or Omissions
- Condominium/Cooperative Directors & Officers Errors Or Omissions

* These forms do not contain a defense within limits provision.





**Customarq Series**
**Life Sciences Insurance Program**

## Premium Summary

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

AM2PAT, INC. DBA SALIENT HEALTH CARE, IN
C.
9400 RANSDELL RD., SUITE 5
RALEIGH, NC 27603

*Policy Number* 7020-67-90 RBO

*Effective Date* APRIL 10, 2007

*Issued by the stock insurance company indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Incorporated under the laws of INDIANA*

*Producer No.* 0026813

*Producer* TRISURE CORPORATION
4325 LAKE BOONE TR #200
RALEIGH, NC 27607-0000

### Policy Period

From: APRIL 10, 2007 To: APRIL 10, 2008
12:01 A.M. standard time at the Named Insured's mailing address shown above.

### Premium Payment

The First Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

### Premium Audit

Certain classifications within our rates and rules indicate that premiums calculated therefrom can be significantly affected by large increases or decreases in your business results. Based upon our underwriting review of information provided by you, we may at our discretion perform a premium audit. You may also request such an audit.

If an audit is conducted and additional premiums are due, they are payable upon notice to the First Named Insured. If as a result of an audit the premium paid is greater than the earned premium, we will return the excess to the First Named Insured. The First Named Insured must keep records of the information we need to perform the audit and send us copies at such times as we may request.

| Coverage | Rate | Premium |
|---|---|---|
| LIABILITY INSURANCE SECTION | | $ 20,326 |

*Issue Date: APRIL 19, 2007*

*continued*



## Premium Summary
*(continued)*

| **TOTAL** | **$ 20,326** |
|---|---|

PCO - RENEWAL 07/08

## Payment Plan

This policy premium is being billed as follows. The amounts shown are due and payable as of the dates shown below:

| Date Payment Due | Amount Due |
|---|---|
| APRIL 10, 2007 | $ 20,326.00 |

LIABILITY DECLARATIONS

## Liability Insurance Section

## Declarations

Form 80-02-0009 (Ed. 4-94) Declarations





# Liability Insurance

## Schedule of Forms

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-0010 | 4-94 | LIABILITY DECLARATIONS | 04/10/07 | 04/19/07 |
| 80-02-2085 | 8-04 | PRODUCTS/COMPLETED OPERATIONS-CM LIFE SCIENCE | 04/10/07 | 04/19/07 |
| 80-02-2285 | 4-01 | DED-PER OCC INCL SUPP PAY-BATCH OR LOT (PCO) | 04/10/07 | 04/19/07 |
| 80-02-2324 | 4-01 | NON ACCUMULATION OF LIMITS OF INSURANCE | 04/10/07 | 04/19/07 |
| 80-02-2445 | 7-98 | TOBACCO EXCLUSION ENDORSEMENT | 04/10/07 | 04/19/07 |
| 80-02-6386 | 10-02 | EXCLUSION - SILICON | 04/10/07 | 04/19/07 |
| 80-02-6403 | 1-03 | CAP ON CERTIFIED TERRORISM LOSSES | 04/10/07 | 04/19/07 |
| 80-02-6411 | 8-04 | LS-EXCL-SPECIFIC GOODS PRODUCTS INCL MED DEV | 04/10/07 | 04/19/07 |
| 80-02-6412 | 8-04 | LS-EXCL-SPECIFIC DISEASES | 04/10/07 | 04/19/07 |
| 80-02-6413 | 8-04 | LS-EXCL-SPECIFIC MATERIALS GOODS PRODUCTS | 04/10/07 | 04/19/07 |
| 80-02-6419 | 8-04 | LS-EXCL-HEALTHCARE PROFESSIONAL SERVICE | 04/10/07 | 04/19/07 |
| 80-02-6424 | 8-04 | LS-EXCL-UNAPPROVED OFF-LABEL PROMOTION | 04/10/07 | 04/19/07 |
| 80-02-6427 | 8-04 | LS-PRODUCT WITHDRAWAL AND CRISIS MGMT EXP | 04/10/07 | 04/19/07 |
| 80-02-6430 | 8-04 | LS-DEFENSE WITHIN THE LIMITS-PCO CONTRACT | 04/10/07 | 04/19/07 |
| 80-02-6443 | 8-04 | LS - EXTENDED OCCURRENCE PERIOD OPTION - PCO | 04/10/07 | 04/19/07 |
| 80-02-6458 | 8-04 | LS-EXCL-HUMAN CLINICAL TRIAL MEDICAL EXPENSES | 04/10/07 | 04/19/07 |
| 80-02-6528 | 4-05 | EXCLUSION - INFORMATION DISTRIBUTION LAWS | 04/10/07 | 04/19/07 |
| 80-02-6541 | 3-05 | CONDITION - PREMIUM AUDIT | 04/10/07 | 04/19/07 |
| 80-02-6849 | 8-04 | LS-NC-ERP/GL (INCLUDING PCO CLAIMS MADE)/PCO | 04/10/07 | 04/19/07 |

*last page*





# Liability Insurance

## Declarations

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

AM2PAT, INC. DBA SALIENT HEALTH CARE, IN
C.
9400 RANSDELL RD., SUITE 5
RALEIGH, NC 27603

*Policy Number* 7020-67-90 RBO

*Effective Date* APRIL 10, 2007

*Issued by the stock insurance company indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Incorporated under the laws of INDIANA*

*Producer No.* 0026813

*Producer* TRISURE CORPORATION
4325 LAKE BOONE TR #200
RALEIGH, NC 27607-0000

"TRUE AND CERTIFIED COPY"

## Policy Period

From: APRIL 10, 2007 To: APRIL 10, 2008
12:01 A.M. standard time at the Named Insured's mailing address shown above.

| Liability Coverage | Limit Of Insurance |
|---|---|
| *PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE* | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |
| EACH OCCURRENCE LIMIT | $ 2,000,000 |
| BODILY INJURY AND PROPERTY DAMAGE DEDUCTIBLE PER OCCURRENCE | $ 25,000 |
| RETROACTIVE DATE | APRIL 10, 2005 |



## Liability Coverage
*(continued)*

**STATE: NORTH CAROLINA**

***LS PRODUCTS/COMP OPS***

| | |
|---|---|
| CLASSIFICATION CODE NUMBER: | 00419 |
| CLASSIFICATION DESCRIPTION: | |
| LS DEVICE MFG. - PROD/COMP. OPS - MODERATE HAZARD | |
| PREMIUM BASIS: | |
| GROSS SALES: | $4,000,000 |
| RATE: | 5.031 |

**Liability Insurance**

*Products-Completed Operations Liability Claims-Made For Life Sciences*

*Table Of Contents*

| **Section** | **Page No.** |
|---|---|
| *Coverages* | 3 |
| *Investigation, Defense And Settlements* | 6 |
| *Supplementary Payments* | 6 |
| *Coverage Territory* | 7 |
| *Who Is An Insured* | 7 |
| *Limits Of Insurance* | 12 |
| *Bodily Injury/Property Damage Exclusions* | 13 |
| *Human Clinical Trial Medical Expenses Exclusions* | 20 |
| *Extended Reporting Periods* | 21 |
| *Conditions* | 23 |
| *Definitions* | 29 |

LIABILITY

CONTRACT

PRODUCTS COMPLETED OPS LIABILITY

*THIS PAGE INTENTIONALLY LEFT BLANK*



# Products-Completed Operations Liability Claims-Made For Life Sciences

## Contract

Please read the entire policy carefully. The terms and conditions of this insurance include the various sections of this contract: Coverages; Investigation, Defense And Settlements; Supplementary Payments; Coverage Territory; Who Is An Insured; Limits Of Insurance; Exclusions; Extended Reporting Periods; Conditions; and Definitions, as well as the Declarations, Common Policy Conditions and any Endorsements and Schedules made a part of this insurance.

Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations and other persons or organizations qualifying as a named **insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.

In addition to the named **insured**, other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. EXCEPT AS OTHERWISE PROVIDED, SUCH COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE **INSURED** DURING THE POLICY PERIOD.

THIS INSURANCE APPLIES ONLY TO **BODILY INJURY** AND **PROPERTY DAMAGE** INCLUDED IN THE **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

## Coverages

### *Bodily Injury And Property Damage Products-Completed Operations Liability Coverage Claims-Made*

A. Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

1. imposed by law; or
2. assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** included in the **products-completed operations hazard**.

B. This coverage applies only if:

1. the **bodily injury** or **property damage** did not occur before the Retroactive Date shown in the Declarations or after the end of the policy period; and
2. a claim by a person or organization for damages for the **bodily injury** or **property damage** is:
   a. first made against any **insured** during:
      i. the policy period; or
      ii. any Extended Reporting Period we provide, as described in the Extended Reporting Periods section of this contract; or
   b. made in accordance with the provisions of the condition titled Notice Of Circumstances.



## Coverages

*Bodily Injury And Property Damage Products-Completed Operations Liability Coverage Claims-Made (continued)*

C. This coverage does not apply to any injury, damage, **occurrence**, claim, **suit** or other circumstance:

1. reported, in whole or in part, to us or any other insurer before the beginning of the policy period; or

2. **deemed known**, before the beginning of the policy period, that could reasonably be expected to result in any payment under this insurance; or

D. For purposes of this coverage:

1. a claim by a person or organization for damages for the **bodily injury** or **property damage** will be deemed to have been made, when:

   a. notice of such claim is received and recorded by:

      i. any **insured**; or

      ii. us; or

   b. we, at our discretion, make a settlement;

   whichever comes first.

2. all claims made for damages for the **bodily injury** to the same person, including damages claimed by a person or organization for care, loss of services or death resulting at any time from the **bodily injury**, will be deemed to have been made at the time the first of such claims is made against any **insured**.

3. all claims made for damages for the **property damage** causing loss to the same person or organization will be deemed to have been made at the time the first of such claims is made against any **insured**.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

*Human Clinical Trial Medical Expenses Coverage*

Subject to all of the terms and conditions of this insurance, we will pay **medical expenses** for **bodily injury** caused by an accident to which this coverage applies in connection with your **human clinical trials**, to which this insurance applies, provided that such:

- **bodily injury** is not excluded under any section of this contract;
- accident occurs during the policy period;
- expenses are incurred and reported to us within one year of the date of the accident; and
- person who sustained the **bodily injury** submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

We will make these payments regardless of fault.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.



## Coverages

*Human Clinical Trial Medical Expenses Coverage (continued)*

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

We have no other obligation or liability under this coverage.

*Special Provisions Applicable To A Human Clinical Trial*

Subject to all of the terms and conditions of this insurance, this insurance applies to a **human clinical trial**, only if:

- the material tested is a **life science product**; and
- exposure to such material, upon or within human beings during such trial, did not first occur before the beginning of the policy period or Retroactive Date as applicable.

With respect to such **human clinical trial**:

A. this insurance applies only if the:

1. **insured** makes all filings that the **insured** is required to make under all applicable laws and regulations and receives all necessary authorizations in connection therewith;
2. trial is approved by the appropriate **institutional review board** or similar organization; and
3. **insured** has not recklessly or willfully violated or consented to any violation of any agreement, contract, law, procedure, protocol or regulation applicable to the conduct of the trial.

B. involving exposure to material, upon or within human beings during such a trial, that first occurs on or after the beginning of the policy period, provided the **insured** is the sponsor of the trial, or has assumed any obligation assigned to a sponsor under any applicable law or regulation, in connection with:

1. an Investigational New Drug Application or similar authorization that is required of any **insured**, for a new **drug**;
2. an Investigational Device Exemption Application or similar authorization that is required of any **insured**, for a new **device family**;
3. human beings who are **cognitively impaired**;
4. human beings who are pregnant;
5. human beings who are under 18 years of age;
6. planned Emergency Use Research testing; or
7. **prisoners**;

this insurance applies only if:

- you give us written notice describing the trial for which you are requesting coverage;
- we agree to issue an endorsement to provide coverage in connection with the trial, in accordance with the terms, conditions and additional premiums determined by us; and
- you accept such terms and conditions and pay such premiums promptly when due.



## Coverages

*Special Provisions Applicable To A Human Clinical Trial (continued)*

Subparagraph B. above does not apply to a trial that has been described to us by you in the application for this insurance, to the extent that we have agreed to provide coverage in connection with such trial.

### Investigation, Defense And Settlements

Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured** against a **suit**, even if such **suit** is false, fraudulent or groundless.

If such a **suit** is brought, we will pay reasonable attorney fees and necessary litigation expenses, that are **claim adjustment expenses**, to defend:

- the **insured**; and
- if applicable, the indemnitee of the **insured**, provided the obligation to defend, or the cost of the defense of, such indemnitee has been assumed by such **insured** in an **insured contract**.

We have no duty to defend any person or organization against any **suit** to which this insurance does not apply.

We may, at our discretion, investigate any **occurrence** and make any settlement, regardless of whether any claim has been made or **suit** has been brought.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

### Supplementary Payments

Subject to all of the terms and conditions of this insurance, we will pay, with respect to a claim we investigate or settle, or a **suit** against an **insured** we defend:

A. **claim adjustment expenses**.

B. reasonable expenses (other than **claim adjustment expenses**) incurred by the **insured** at our request to assist us in the investigation or defense of such claim or **suit**, including actual loss of earnings up to $1,000 a day because of time off from work.

C. prejudgment interest awarded against the **insured** on that part of a judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

D. interest on the full amount of a judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

Supplementary Payments does not include any fine or other penalty.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.



## Coverage Territory

Subject to all of the terms and conditions of this insurance, this insurance:

A. applies anywhere.

B. does not apply to:

1. **bodily injury** or **property damage** that takes place outside the United States of America (including its possessions and territories), Canada and Puerto Rico, unless a **suit** on the merits (to determine the **insured**'s responsibility to pay damages, to which this insurance applies) is brought in the United States of America (including its possessions and territories), Canada or Puerto Rico.

2. any damages, loss, cost or expense in connection with any **suit** brought outside the United States of America (including its possessions and territories), Canada or Puerto Rico.

## Who Is An Insured

### Sole Proprietorships

If you are an individual, you and your spouse are **insureds**; but you and your spouse are **insureds** only with respect to the conduct of a business of which you are the sole owner.

If you die:

- persons or organizations having proper temporary custody of your property are **insureds**; but they are **insureds** only with respect to the maintenance or use of such property and only for acts until your legal representative has been appointed; and
- your legal representatives are **insureds**; but they are **insureds** only with respect to their duties as your legal representatives. Such legal representatives will assume your rights and duties under this insurance.

### Partnerships Or Joint Ventures

If you are a partnership (including a limited liability partnership) or a joint venture, you are an **insured**. Your members, your partners and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business.

### Limited Liability Companies

If you are a limited liability company, you are an **insured**. Your members and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business. Your managers are **insureds**; but they are **insureds** only with respect to their duties as your managers.

### Other Organizations

If you are an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **insured**. Your directors and **officers** are **insureds**; but they are **insureds** only with respect to their duties as your directors or **officers**. Your stockholders and their spouses are **insureds**; but they are **insureds** only with respect to their liability as your stockholders.

### Employees

Your **employees** are **insureds**; but they are **insureds** only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. Voluntary participation in a **human clinical trial** will not be deemed to be within the scope of their employment or their performance of duties related to the conduct of your business.



## Who Is An Insured

*Employees (continued)*

However, no **employee** is an **insured** for:

A. **bodily injury**

1. to you, to any of your directors, managers, members, **officers** or partners (whether or not an **employee**) or to any co-**employee** while such injured person is either in the course of his or her employment or while performing duties related to the conduct of your business;

2. to the brother, child, parent, sister or spouse of such injured person as a consequence of any injury described in subparagraph A.1. above; or

3. for which there is any obligation to share damages with or repay someone else who must pay damages because of any injury described in subparagraphs A.1. or A.2. above.

This limitation does not apply to:

- you or to your directors, managers, members, **officers**, partners or supervisors as **insureds**;
- your **employees**, as **insureds**, with respect to such damages caused by cardiopulmonary resuscitation or other first aid services administered by such an **employee**.

B. **property damage** to any property owned, occupied or used by you or by any of your directors, managers, members, **officers** or partners (whether or not an **employee**) or by any of your **employees**.

*Volunteers*

Persons who are volunteer workers for you are **insureds**; but they are **insureds** only for acts within the scope of their activities for you and at your direction. However, no such person is an **insured** in connection with their voluntary participation in a **human clinical trial**.

*Real Estate Managers*

Persons (other than your **employees**) or organizations acting as your real estate managers are **insureds**; but they are **insureds** only with respect to their duties as your real estate managers.

*Vendors*

Persons or organizations who are vendors of **your product** are **insureds**; but they are **insureds** only with respect to their liability for damages for **bodily injury** or **property damage** resulting from the distribution or sale of **your product** in the regular course of their business and only if this insurance applies to such products (included in the **products-completed operations hazard**).

However, no such person or organization is an **insured** with respect to any:

- assumption of liability by them in a contract or agreement. This limitation does not apply to the liability for damages for **bodily injury** or **property damage** that such vendor would have in the absence of such contract or agreement;
- representation or warranty unauthorized by you;
- chemical or physical change in **your product** made intentionally by the vendor;
- repackaging, unless unpacked solely for the purpose of inspection, demonstration or testing, or the substitution of parts under instruction from the manufacturer and then repacked in the original container;

08CV4779
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER
BR

# Exhibit A
# Part 2



## Who Is An Insured

*Vendors (continued)*

- failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of **your products**;
- demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of **your product**;
- of **your products** which, after distribution or sale by you, have been labeled or relabeled or used as a container, ingredient or part of any other thing or substance by or for the vendor; or
- rendering of or failure to render any **healthcare service** whether or not such service is ordinary to any **insured**'s profession and regardless of whether or not a claim or **suit** is brought by any client or other person or organization.

Further, no person or organization:

A. from whom you have acquired **your product**, or any container, ingredient or part entering into, accompanying or containing **your product**;

B. acting as a:

1. **life science product sales contractor**;
2. life science product service contractor; or
3. human clinical trial contractor; or

C. that dispenses, distributes, furnishes or sells a **life science product** to a provider of **healthcare service**;

is an **insured** under this provision.

*Subsidiary Or Newly Acquired Or Formed Organizations*

If there is no other insurance available, the following organizations will qualify as named **insureds**:

A. a subsidiary organization of the first named **insured** shown in the Declarations of which, at the beginning of the policy period and at the time of loss, such first named **insured** controls, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization; or

B. a subsidiary organization of the first named **insured** shown in the Declarations that such first named **insured** acquires or forms during the policy period, if at the time of loss such first named **insured** controls, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization. However, unless we agree to extend coverage for an additional period (in accordance with the provisions of paragraph C. under Limitations On Who Is An Insured), coverage under this provision is afforded only for **bodily injury** or **property damage** that did not occur later than:

- 90 days after such acquisition or formation is executed; or
- the end of the policy period;

whichever comes first.



## *Who Is An Insured*
*(continued)*

### *Human Clinical Trial Contractors*

Persons (other than your **employees**) or organizations acting as a **human clinical trial contractor** for you, pursuant to a written contract or agreement between you and such person or organization, are **insureds**; but they are **insureds** only:

A. with respect to their liability for damages for **bodily injury** or **property damage** (included in the **products-completed operations hazard**) resulting from acts:

   1. in connection with your **human clinical trial**, to which this insurance applies; and

   2. in the regular course of their business; and

B. if you are obligated, pursuant to such contract or agreement, to provide them with such insurance as is afforded by this policy.

However, no such person or organization is an **insured** with respect to any:

- assumption of liability by them in a contract or agreement. This limitation does not apply to the liability for damages for injury or damage, to which this insurance applies, that the person or organization would have in the absence of such contract or agreement.
- representation or warranty unauthorized by you.
- chemical or physical change in **your product** made intentionally by the person or organization.
- damages arising out of their sole negligence.
- reckless or willful violation of any law or regulation.

Further, no person or organization from whom you have acquired **your product**, or any container, ingredient or part entering into, accompanying or containing **your product**, is an **insured** under this provision.

### *Life Science Product Sales Contractors*

Persons (other than your **employees**) or organizations acting as a **life science product sales contractor** for you, pursuant to a written contract or agreement between you and such person or organization, are **insureds**; but they are **insureds** only:

A. with respect to their liability for damages for **bodily injury** or **property damage** (included in the **products-completed operations hazard**) resulting from the dispensing, distribution, furnishing or sale of **your product**:

   1. if **your product** is a **life science product**, to which this insurance applies; and

   2. in the regular course of their business; and

B. if you are obligated, pursuant to such contract or agreement, to provide them with such insurance as is afforded by this policy.

However, no such person or organization is an **insured** with respect to any:

- assumption of liability by them in a contract or agreement. This limitation does not apply to the liability for damages for injury or damage, to which this insurance applies, that the person or organization would have in the absence of such contract or agreement.
- representation or warranty unauthorized by you.
- chemical or physical change in **your product** made intentionally by the person or organization.
- damages arising out of their sole negligence.



## Who Is An Insured

*Life Science Product Sales Contractors (continued)*

- reckless or willful violation of any law or regulation.
- rendering of or failure to render any **healthcare service** whether or not such service is ordinary to any **insured**'s profession and regardless of whether or not a claim or **suit** is brought by any client or other person or organization.
- of **your products** which, after distribution or sale by you, have been labeled or relabeled or used as a container, ingredient or part of any other substance or thing by or for the person or organization. This limitation does not apply to such relabeling of **your product** in the regular course of dispensing or furnishing the required amount or dosage of such product.

Further, no person or organization from whom you have acquired **your product**, or any container, ingredient or part entering into, accompanying or containing **your product**, is an **insured** under this provision.

*Life Science Product Service Contractors*

Persons (other than your **employees**) or organizations acting as a **life science product service contractor** for you, pursuant to a written contract or agreement between you and such person or organization, are **insureds**; but they are **insureds** only:

A. with respect to their liability for damages for **bodily injury** or **property damage** resulting from acts:

1. within the scope of your **life science product service**, to which this insurance applies; and
2. in the regular course of their business; and

B. if you are obligated, pursuant to such contract or agreement, to provide them with such insurance as is afforded by this policy.

However, no such person or organization is an **insured** with respect to any:

- assumption of liability by them in a contract or agreement. This limitation does not apply to the liability for damages for injury or damage, to which this insurance applies, that the person or organization would have in the absence of such contract or agreement.
- representation or warranty unauthorized by you.
- chemical or physical change in **your product** made intentionally by the person or organization.
- damages arising out of their sole negligence.
- reckless or willful violation of any law or regulation.
- rendering of or failure to render any **healthcare service** whether or not such service is ordinary to any **insured**'s profession and regardless of whether or not a claim or **suit** is brought by any client or other person or organization.

Further, no person or organization from whom you have acquired **your product**, or any container, ingredient or part entering into, accompanying or containing **your product**, is an **insured** under this provision.



## *Who Is An Insured*
*(continued)*

*Limitations On Who Is An Insured*

A. Except to the extent provided under the Subsidiary Or Newly Acquired Or Formed Organizations provision above, no person or organization is an **insured** with respect to the conduct of any person or organization that is not shown as a named **insured** in the Declarations.

B. No person or organization is an **insured** with respect to the:

1. ownership, maintenance or use of any assets; or
2. conduct of any person or organization whose assets, business or organization;

you acquire, either directly or indirectly, for any **bodily injury** or **property damage** that occurred, in whole or in part, before such acquisition is executed.

C. No person or organization is an **insured** with respect to the:

1. ownership, maintenance or use of any assets you acquire;
2. conduct of any person or organization whose assets, business or organization you acquire; or
3. conduct of any organization you form;

during the policy period, either directly or indirectly, for any **bodily injury** or **property damage** that occurs later than:

- 90 days after such acquisition or formation is executed; or
- the end of the policy period;

whichever comes first, unless:

- you give us written notice describing the acquisition or formation for which you are requesting an extension of coverage for an additional period;
- we agree to issue an endorsement to extend coverage for an additional period (up to the end of the policy period) in connection with the acquisition or formation, in accordance with the terms, conditions and additional premiums determined by us; and
- you accept such terms and conditions and pay such premiums promptly when due.

## *Limits Of Insurance*

The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

- **insureds**;
- claims made or **suits** brought; or
- persons or organizations making claims or bringing **suits**.

The Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.



## Limits Of Insurance
*(continued)*

*Products-Completed Operations Aggregate Limit*

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for the sum of damages for **bodily injury** and **property damage** included in the **products-completed operations hazard**.

*Human Clinical Trial Medical Expenses Aggregate Limit*

Subject to the Human Clinical Trial Medical Expenses Each Person Limit, the Human Clinical Trial Medical Expenses Aggregate Limit is the most we will pay for the sum of **medical expenses**, under Human Clinical Trial Medical Expenses Coverage.

*Each Occurrence Limit*

The Each Occurrence Limit is the most we will pay for the sum of:

- damages for **bodily injury** and **property damage**; and
- **medical expenses**;

arising out of any one **occurrence**.

Any such sums we pay for such damages will reduce the amount of the applicable aggregate limit for any other payment.

If the applicable aggregate limit has been reduced to an amount that is less than the Each Occurrence Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.

*Human Clinical Trial Medical Expenses Each Person Limit*

Subject to the Each Occurrence Limit, the Human Clinical Trial Medical Expenses Each Person Limit is the most we will pay for the sum of **medical expenses**, under Human Clinical Trial Medical Expenses Coverage, for **bodily injury** sustained by any one person.

Any such sums we pay will reduce the amount of the applicable aggregate limit available for any other payment.

If the applicable aggregate limit has been reduced to an amount that is less than the Human Clinical Trial Medical Expenses Each Person Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.

*Payments That Reduce The Limits Of Insurance*

Any damages or **medical expenses** we pay will reduce the Limits Of Insurance.

Payments we make under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract will not reduce the Limits Of Insurance.

## Bodily Injury/Property Damage Exclusions

*Abuse Or Molestation*

This insurance does not apply to **bodily injury** or **property damage** arising out of any:

A. actual or threatened abuse or molestation, by anyone, of any person while in the care, control or custody of any **insured**; or



## *Bodily Injury/Property Damage Exclusions*

*Abuse Or Molestation (continued)*

B. retention, employment, investigation or supervision, or reporting to or failure to report to the proper authorities, of a person for whom any **insured** is or ever was legally responsible and whose conduct would be excluded in subparagraph A. above.

*Alcoholic Beverage Type Businesses*

This insurance does not apply to **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

- causing or contributing to the intoxication of any person;
- furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
- any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

*Asbestos*

A. This insurance does not apply to **bodily injury** or **property damage** arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **asbestos**.

B. This insurance does not apply to any loss, cost or expense arising out of any:

1. request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **asbestos**; or

2. claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **asbestos**.

*Contracts, Bodily Injury Or Property Damage*

This insurance does not apply to **bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of assumption of liability in a contract or agreement.

This exclusion does not apply to the liability for damages:

- that such **insured** would have in the absence of such contract or agreement; or
- assumed in an oral or written contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage**, to which this insurance applies, occurs after the execution of such contract or agreement.

*Damage To Alienated Premises*

This insurance does not apply to **property damage** to any premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises.

This exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.



## Bodily Injury/Property Damage Exclusions
*(continued)*

*Damage To Impaired Property Or Property Not Physically Injured*

This insurance does not apply to **property damage** to:

- **impaired property**; or
- property that has not been physically injured;

arising out of any:

- defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or
- delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms and conditions.

This exclusion does not apply to the loss of use of other tangible property resulting from sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

*Damage To Owned Property*

This insurance does not apply to **property damage** to any property owned by you.

*Damage To Various Property Of Others (Care, Control Or Custody)*

This insurance does not apply to **property damage** to any:

- personal property loaned or rented to you;
- property held by you or on your behalf for sale or entrusted to you for safekeeping or storage;
- property on your premises for purposes of performing operations on such property by you or on your behalf;
- tools or equipment used by you or on your behalf in performing operations; or
- property in your care, control or custody that will be erected, installed or used in construction operations by you or on your behalf.

This exclusion does not apply to the liability for damages assumed in a sidetrack agreement.

*Damage To Your Product*

This insurance does not apply to **property damage** to **your product** arising out of it or any part of it.

*Damage To Your Work*

This insurance does not apply to **property damage** to **your work** arising out of it or any part of it.

This exclusion does not apply if the damaged work or the work causing the damage was performed on your behalf by a subcontractor.

*Employer's Liability*

A. This insurance does not apply to **bodily injury** to an **employee** of the **insured** arising out of and in the course of:

1. employment by the **insured**; or
2. performing duties related to the conduct of the **insured**'s business.



## Bodily Injury/Property Damage Exclusions

*Employer's Liability (continued)*

B. This insurance does not apply to **bodily injury** to the brother, child, parent, sister or spouse of such **employee** as a consequence of any injury described in paragraph A. above.

Voluntary participation in a **human clinical trial** will not be deemed to be within the course of employment or performance of duties as described in paragraph A. above.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and
- to any obligation to share damages with or repay someone else who must pay damages because of any injury described in paragraphs A. or B. above.

This exclusion does not apply to the liability for damages assumed by the **insured** in an **insured contract**.

*Employment-Related Practices*

A. This insurance does not apply to any damages sustained at any time by any person, whether or not sustained in the course of employment by any **insured**, arising out of any employment-related act, omission, policy, practice or representation directed at such person, occurring in whole or in part at any time, including any:

1. arrest, detention or imprisonment;
2. breach of any express or implied covenant;
3. coercion, criticism, humiliation, prosecution or retaliation;
4. defamation or disparagement;
5. demotion, discipline, evaluation or reassignment;
6. discrimination, harassment or segregation;
7. a. eviction; or
   b. invasion or other violation of any right of occupancy;
8. failure or refusal to advance, compensate, employ or promote;
9. invasion or other violation of any right of privacy or publicity;
10. termination of employment; or
11. other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time.

B. This insurance does not apply to any damages sustained at any time by the brother, child, parent, sister or spouse of such person at whom any employment-related act, omission, policy, practice or representation is directed, as described in paragraph A. above, as a consequence thereof.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and
- to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

## Bodily Injury/Property Damage Exclusions
*(continued)*

### Enhancement, Maintenance Or Prevention Expenses

This insurance does not apply to any loss, cost or expense incurred by you or others for any:

A. enhancement or maintenance of any property; or

B. prevention of any injury or damage to any:

1. person or organization; or
2. property you own, rent or occupy.

### Expected Or Intended Bodily Injury Or Property Damage

This insurance does not apply to **bodily injury** or **property damage** arising out of an act that:

- is intended by the **insured**; or
- would be expected from the standpoint of a reasonable person in the circumstances of the **insured**;

to cause **bodily injury** or **property damage**, even if the actual **bodily injury** or **property damage** is of a different degree or type than intended or expected.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or tangible property.

### Healthcare Or Other Professional Services

This insurance does not apply to **bodily injury** or **property damage** arising out of the rendering of or failure to render any:

A. **healthcare service**; or

B. other professional service, advice or instruction;

whether or not such service, advice or instruction is ordinary to any **insured**'s profession and regardless of whether or not a claim or **suit** is brought by any client or any other person or organization.

Subparagraph A. above does not apply to:

- **bodily injury** caused by a defect, deficiency, inadequacy or dangerous condition in **your product**;
- **bodily injury** caused by cardiopulmonary resuscitation or other first aid services (other than in connection with a **human clinical trial**);
- **bodily injury** resulting from the service provided within the scope of and in accordance with the applicable written protocol of a **human clinical trial**, in connection with a **human clinical trial**; or
- Human Clinical Trial Medical Expenses Coverage;

to which this insurance applies.

### Institutional Review Boards

This insurance does not apply to **bodily injury** or **property damage** arising out of the activities of any **institutional review board**.



## *Bodily Injury/Property Damage Exclusions*
*(continued)*

### *Intellectual Property Laws Or Rights*

This insurance does not apply to any actual or alleged **bodily injury** or **property damage** arising out of, giving rise to or in any way related to any actual or alleged:

- assertion; or
- infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

### *Nuclear Energy*

A. This insurance does not apply to **bodily injury** or **nuclear property damage**:

1. with respect to which any **insured** under this policy also has status as an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would have had status as an insured under any such policy but for its termination upon exhaustion of its limit of insurance; or

2. arising out of the **nuclear hazardous properties** of **nuclear material** and with respect to which:

   a. any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amendatory thereof; or

   b. the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. This insurance does not apply to **bodily injury** or **nuclear property damage** arising out of the **nuclear hazardous properties** of **nuclear material**:

1. if the **nuclear material**:

   a. is at any **nuclear facility** owned by, or operated by or on behalf of, any **insured**;

   b. has been discharged or dispersed therefrom; or

   c. is contained in **nuclear spent fuel** or **nuclear waste** at any time transported, handled, stored, disposed of, processed, treated, possessed or used by or on behalf of any **insured**; or

2. in any way related to the furnishing by any **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**. But if such facility is located within the United States of America (including its possessions or territories) or Canada, this subparagraph 2. applies only to **nuclear property damage** to such **nuclear facility** and any property thereat.



## Bodily Injury/Property Damage Exclusions

*(continued)*

### Pollution

A. This insurance does not apply to **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

1. at or from any premises, site or location which is or was at any time owned or occupied by, or loaned or rented to, any **insured**;

2. at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

3. which are or were at any time transported, handled, stored, disposed of, processed or treated as waste by or for any:

   a. **insured**; or

   b. person or organization for whom any **insured** may be legally responsible; or

4. at or from any premises, site or location on which any **insured** or any contractor or subcontractor working directly or indirectly on any **insured**'s behalf is monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

B. This insurance does not apply to any loss, cost or expense arising out of any:

1. request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

2. claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

Paragraph B. above does not apply to the liability for damages, for **property damage**, that the **insured** would have in the absence of such request, demand, order or regulatory or statutory requirement, or such claim or proceeding by or on behalf of a governmental authority.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

### Progressions Of Known Bodily Injury Or Property Damage

This insurance does not apply to **bodily injury** or **property damage** that is a change, continuation or resumption of any injury or damage **deemed known**, before the beginning of the policy period, to have occurred.

### Recall Of Products, Work Or Impaired Property

This insurance does not apply to any damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

- **your product**;
- **your work**; or



## Bodily Injury/Property Damage Exclusions

*Recall Of Products, Work Or Impaired Property (continued)*

- **impaired property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

*Unapproved Goods Or Products*

This insurance does not apply to **bodily injury** or **property damage** arising out of the actual, alleged or threatened hazardous properties of goods or products:

A. declared unsafe by any governmental or regulatory authority on the basis of such hazardous properties, regardless of whether such goods or products were declared unsafe before or after:

1. the goods or products were disposed of, distributed, handled, manufactured or sold; or
2. such damages were incurred; or

B. disposed of, distributed, handled, manufactured or sold without approval by the applicable governmental or regulatory authority.

Subparagraph A. above does not apply to **your product**, to which this insurance applies, if such good or product was disposed of, distributed, handled, manufactured and sold before it was declared unsafe, provided it was not declared unsafe before the beginning of the policy period.

*Unapproved Human Clinical Trials*

This insurance does not apply to **bodily injury** or **property damage** in connection with any **human clinical trial**, if such injury or damage arises out of any unapproved exposure to material, upon or within human beings during such a trial, that occurs after:

- a hold has been placed on the trial;
- approval of an Investigational New Drug Application, Investigational Device Exception Application or similar authorization applicable to the trial has been withdrawn; or
- the trial has been ordered to be discontinued;

by any governmental or regulatory authority having jurisdiction.

*Workers' Compensation Or Similar Laws*

This insurance does not apply to any obligation of the **insured** under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

## Human Clinical Trial Medical Expenses Exclusions

*Athletic Activities*

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any person while taking part in athletics, unless such injury results from participation in a **human clinical trial**, to which this insurance applies.



## Human Clinical Trial Medical Expenses Exclusions
*(continued)*

### Injury To Insureds

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any **insured**, except a:

- person who is otherwise your **employee**, if such injury results from voluntary participation in; or
- volunteer worker, if such injury results from;

a **human clinical trial**, to which this insurance applies.

### Nuclear Energy

This insurance does not apply to **medical expenses** arising out of **bodily injury** in any way related to the:

- **nuclear hazardous properties** of **nuclear material**; and
- operation of a **nuclear facility** by any person or organization.

### Products-Completed Operations Hazard

This insurance does not apply to **medical expenses** arising out of **bodily injury** included in the **products-completed operations hazard**.

This exclusion does not apply to **medical expenses** resulting from **bodily injury** in connection with a **human clinical trial**, to which this insurance applies, as described in subparagraph C.1. of the definition titled **products-completed operations hazard**.

### Workers' Compensation Or Similar Laws

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any person, whether or not an **employee** of any **insured**, if benefits for such **bodily injury** are payable or must be provided under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

## Extended Reporting Periods

### When Extended Reporting Periods Apply

We will automatically provide a Basic Extended Reporting Period and, if you purchase it, a Supplemental Extended Reporting Period, if:

A. this insurance is canceled or not renewed; or

B. we renew or replace this insurance with other insurance that:

   1. has a Retroactive Date later than the Retroactive Date shown in the Declarations for this insurance; or

   2. does not apply on a claims-made basis.



*How Extended Reporting Periods Apply*

## Extended Reporting Periods

Extended Reporting Periods:

A. apply only to claims for damages for **bodily injury** or **property damage** that did not occur before the Retroactive Date shown in the Declarations or after the end of the policy period.

*How Extended Reporting Periods Apply (continued)*

B. do not:

1. extend the policy period or change the scope of coverage provided;
2. reinstate or increase the Limits Of Insurance; or
3. apply to any injury, damage, **occurrence**, claim, **suit** or other circumstance reported, in whole or in part, to us or any other insurer before the beginning of the applicable Extended Reporting Period.

C. may not be canceled once in effect.

*Basic Extended Reporting Period*

A Basic Extended Reporting Period is automatically provided. This period begins with the end of the policy period and lasts no longer than:

A. five years with respect to claims first made against any **insured** resulting from **occurrences** reported to us, not later than 60 days after the end of the policy period, in accordance with paragraphs A. and B. of the condition titled Duties In The Event Of Occurrence, Claim Or Suit.

B. 60 days with respect to claims first made against any **insured** resulting from an **occurrence** not reported to us in accordance with paragraph A. above.

Such claims will be deemed to have been made during the policy period.

The Basic Extended Reporting Period does not apply to any claim that is covered under any other insurance (including any subsequent insurance you purchase), or that would be covered, but for exhaustion of the amount of insurance otherwise applicable to such claim.

*Supplemental Extended Reporting Period*

A Supplemental Extended Reporting Period is available, but only by an endorsement and for an additional premium, subject to the following provisions.

If purchased, this period begins with the end of the Basic Extended Reporting Period and lasts up to an unlimited time.

Claims actually first made during this Supplemental Extended Reporting Period will be deemed to have been made during the policy period.

You must give us a written request to purchase a Supplemental Extended Reporting Period within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium for the Supplemental Extended Reporting Period Endorsement in accordance with our rules and rates. The additional premium will not exceed 200 percent of the annual premium for this insurance.

The Supplemental Extended Reporting Period Endorsement will set forth the terms and conditions, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded is excess over any other valid and collectible insurance available under insurance in force after the Supplemental Extended Reporting Period begins.



CHUBB

## Conditions

### Adverse Events Reporting

Reporting an **adverse event** to us, another insurer or a governmental or regulatory authority, in itself, does not constitute:

- a conclusion that **your product** caused or contributed to such event;
- an admission or assumption of liability;
- a notice as described under the condition titled Notice Of Circumstances;
- knowledge of a circumstance that would be expected to result in payment under this insurance; or
- that injury or damage was expected or intended.

### Arbitration

We are entitled to exercise all of the **insured**'s rights in the choice of arbitrators and in the conduct of any arbitration proceeding, except when the proceeding is between us and the **insured**.

### Bankruptcy

Bankruptcy or insolvency of the **insured** or of the **insured**'s estate will not relieve us of our obligations under this insurance.

### Disclosures And Representations

We have issued this insurance:

- based upon representations you made to us; and
- in reliance upon your representations.

Unintentional failure of an **employee** of the **insured** to disclose a hazard or other material information will not violate this condition, unless an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee knows about such hazard or other material information.

### Duties In The Event Of Occurrence, Claim Or Suit

A. You must see to it that we and any other insurers are notified as soon as practicable of any **occurrence** that may result in a claim, if the claim may involve us or such other insurers. To the extent possible, notice should include:

   1. how, when and where the **occurrence** happened;
   2. the names and addresses of any injured persons and witnesses; and
   3. the nature and location of any injury or damage arising out of the **occurrence**.

   Notice of an **occurrence** is not notice of a claim.

B. If a claim is made or **suit** is brought against any **insured**, you must:

   1. immediately record the specifics of the claim or **suit** and the date received;
   2. notify us and other insurers as soon as practicable; and
   3. see to it that we receive written notice of the claim or **suit** as soon as practicable.

C. You and any other involved **insured** must:

   1. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;
   2. authorize us to obtain records and other information;



## Conditions

*Duties In The Event Of Occurrence, Claim Or Suit (continued)*

3. cooperate with us and other insurers in the:
   a. investigation or settlement of the claim; or
   b. defense against the **suit**; and
4. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **insured** because of loss to which this insurance may also apply.

D. No **insured** will, except at that **insured**'s own cost, make any payment, assume any obligation or incur any expense, other than for first aid, without our consent.

E. Knowledge of an **occurrence** by an agent or **employee** of the **insured** will not constitute knowledge by the **insured**, unless an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee knows about such **occurrence**.

F. Failure of an agent or **employee** of the **insured**, other than an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee, to notify us of an **occurrence** that such person knows about will not affect the insurance afforded to you.

*Legal Action Against Us*

No person or organization has a right under this insurance to:

- join us as a party or otherwise bring us into a **suit** seeking damages from an **insured**; or
- sue us on this insurance unless all of the terms and conditions of this insurance have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after an actual:

- trial in a civil proceeding; or
- arbitration or other alternative dispute resolution proceeding;

but we will not be liable for damages that are not payable under the terms and conditions of this insurance or that are in excess of the applicable Limits Of Insurance.

*Notice Of Circumstances*

A. If, prior to the end of the policy period, you become aware of a circumstance that has resulted or could result in injury or damage, to which this insurance applies, a claim for damages for such injury or damage will be deemed to have been made during the policy period, provided:

1. you see to it that we receive written notice of such circumstance as soon as practicable and during the policy period; and
2. such claim is actually first made against any **insured** before the later of the end of:
   a. the policy period of this insurance;
   b. the policy period of a subsequent, continuous renewal or replacement of this insurance, that is issued to you by us or by an affiliate of ours; or
   c. any extended reporting period exercised under the insurance described in subparagraph A.2.a. or A.2.b. above.

Notification must be in accordance with paragraphs A. and B. of the condition titled Duties In The Event Of Occurrence, Claim Or Suit.



## Conditions

*Notice Of Circumstances (continued)*

B. Coverage hereunder:

1. applies only to claims for damages for **bodily injury** or **property damage** that did not occur before the Retroactive Date shown in the Declarations or after the end of the policy period.

2. does not:

   a. extend the policy period or change the scope of coverage provided;

   b. reinstate or increase the Limits Of Insurance; or

   c. apply to any:

      i. injury, damage, **occurrence**, claim, **suit** or other circumstance reported, in whole or in part, to us or any other insurer before the beginning of the policy period; or

      ii. claim that is covered under any other insurance (including any subsequent insurance you purchase), or that would be covered, but for exhaustion of the amount of insurance otherwise applicable to such claim.

*Other Insurance*

If other valid and collectible insurance is available to the **insured** for loss we would otherwise cover under this insurance, our obligations are limited as follows.

*Primary Insurance*

This insurance is primary except when the Excess Insurance provision described below applies.

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in the Method of Sharing provision described below.

*Excess Insurance*

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

A. that is insurance:

1. provided to you by any person or organization working under contract or agreement for you.

2. under which you are included as an insured.

B. of any kind, that applies to **medical expenses** in connection with a **human clinical trial**, regardless of whether such insurance is provided to any:

1. **insured**;

2. human being participating in such trial; or

3. other person or organization.

C. that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies on other than a claims-made basis, if:

1. no Retroactive Date is shown in the Declarations of this insurance.



## Conditions

*Other Insurance (continued)*

2. the other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend the **insured** against any **suit** if any other insurer has a duty to defend such **insured** against such **suit**. If no other insurer defends, we will undertake to do so, but we will be entitled to the **insured**'s rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of the total:

- amount that all other insurance would pay for loss in the absence of this insurance; and
- of all deductible and self-insured amounts under all other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not negotiated specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this insurance.

*Method of Sharing*

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this method each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

*Premium Audit*

We will compute all premiums for this insurance in accordance with our rules and rates.

In accordance with the Estimated Premiums section of the Premium Summary, premiums shown with an asterisk (*) are estimated premiums and are subject to audit.

In addition to or in lieu of such designation in the Premium Summary, premiums may be designated as estimated premiums elsewhere in this policy. In that case, these premiums will also be subject to audit, and the second paragraph of the Estimated Premiums section of the Premium Summary will apply.

*Separation Of Insureds*

Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this insurance to the first named **insured**, this insurance applies:

- as if each named **insured** were the only named **insured**; and
- separately to each **insured** against whom claim is made or **suit** is brought.

*Transfer Or Waiver Of Rights Of Recovery Against Others*

We will waive the right of recovery we would otherwise have had against another person or organization, for loss, to which this insurance applies, provided the **insured** has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.



## Conditions

*Transfer Or Waiver Of Rights Of Recovery Against Others (continued)*

To the extent that the **insured**'s rights to recover all or part of any payment made under this insurance have not been waived, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring suit or transfer those rights to us and help us enforce them.

*Your Right To Claim Information*

We will provide the first named **insured** shown in the Declarations the following information relating to this and any preceding coverage we have issued to you during the previous three years:

- a list or other record of each **occurrence**, not previously reported to any other insurer, of which we were notified in accordance with the Duties In The Event Of Occurrence, Claim Or Suit condition of this contract. We will include the date and brief description of the **occurrence** if that information was in the notice we received.
- a summary by policy year, of payments made and amounts reserved, stated separately, under any applicable aggregate limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values. You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first named **insured** within 60 days after the end of the policy period. Then, we will provide this information within 45 days of receipt of the request.

We compile claim information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first named **insured**, we make no representations or warranties to any **insured**, insurer or others to whom this information is furnished by or on behalf of any **insured**. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

THIS PAGE INTENTIONALLY LEFT BLANK



## Definitions

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

### Adverse Event

**Adverse event** includes any:

A. outcome of the following types, regardless of whether or not such outcome is expected or intended:

1. congenital anomaly or birth defect;
2. death;
3. disability or incapacity;
4. hospitalization; or
5. life threatening disease, injury or sickness;

of any person;

B. intervention to prevent any outcome described in subparagraph A. above;

C. malfunction of **your product** that may give rise to any outcome described in subparagraphs A. or B. above; or

D. condition that may give rise to any outcome described in subparagraphs A., B. or C. above, requiring notification to a governmental or regulatory authority.

### Agreed Settlement

**Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

### Asbestos

**Asbestos** means asbestos in any form, including its presence or use in any alloy, by-product or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.

### Auto

**Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

### Bodily Injury

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.



**Definitions**
*(continued)*

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

*Claim Adjustment Expenses*

**Claim adjustment expenses**:

A. means:

1. reasonable attorney and paralegal fees and salaries (including those of attorneys and paralegals who are our **employees**).
2. reasonable expenses relating to a **suit**, to which this insurance applies, including the cost of expert witnesses, transcripts, court reporters, research reports and depositions.
3. the cost of:
   a. bail bonds; or
   b. bonds required to:
      i. appeal judgements; or
      ii. release attachments;

   but only for:

   - bonds in connection with a **suit**, to which this insurance applies; and
   - bond amounts within the available Limits Of Insurance.

   We do not have to furnish these bonds.
4. costs taxed against the **insured** in a **suit**, to which this insurance applies.
5. the reasonable cost and expense of any investigation that we undertake at our discretion after receiving notice from you or any other person or organization, regardless of whether such notice constitutes a claim or **suit**.
6. other reasonable expenses that we allocate to a specific claim or **suit**.

B. does not include:

1. a. any attorney fees or litigation expenses; or
   b. any other loss, cost or expense;

   in connection with any injunction or other equitable relief.
2. any fine or other penalty.
3. the salaries or expenses of our **employees** (other than those described in subparagraph A.1. above) or any salaries or expenses of any **insured**'s **employees** or directors, managers, members, officers, partners or workers (whether or not an **employee**).

*Cognitively Impaired*

**Cognitively impaired** means suffering from any:

- alcohol or drug dependency;
- degenerative disease affecting the brain;
- dementia or other similar disorder;
- disabling physical handicap;
- mental retardation or other similar disorder;
- neurosis, psychosis or other similar disorder;

08CV4779
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER
BR

# Exhibit A
# Part 3



## Definitions

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

### Cognitively Impaired (continued)

- terminal physical illness; or
- other condition, disease, injury or sickness;

that diminishes a human being's capacity for judgment or reasoning.

### Cosmetic

**Cosmetic** means an article that is intended to be applied to the human body for altering appearance, beautifying, cleansing or promoting attractiveness.

### Deemed Known

**Deemed known** means known by, or that should have been known from the standpoint of a reasonable person in the circumstances of:

- you; or
- any of your directors, managers, members, **officers** or partners (whether or not an **employee**). **Officer** will be deemed to include an **officer**'s designee.

Such injury, damage, **occurrence**, claim, **suit** or circumstance, as applicable, will be **deemed known** at the earliest time when any such person described above:

A. reports all, or any part, of the injury, damage, **occurrence**, claim, **suit** or circumstance to us or any other insurer;

B. receives a claim for damages in connection with the injury, damage, **occurrence** or circumstance; or

C. becomes aware:

1. that the injury or damage has occurred or has begun to occur; or
2. of any actual, alleged or threatened injury, damage, **occurrence**, claim or **suit** in connection with the circumstance.

### Device Family

**Device family** means a **medical device** or a group of such devices manufactured by or for the same organization and having the same basic design and performance characteristics and intended function and use.

### Dietary Supplement

**Dietary supplement** means a good or product, other than conventional food, that is or includes:

- an amino acid, herb or other botanical, mineral, vitamin or other similar substance; or
- a combination, concentrate, constituent, extract or metabolite of the substances described above;

which is intended to supplement the diet of human beings.

### Drug

**Drug** means a biologic or synthetic article, other than conventional food, that is intended to achieve a chemical action upon or within the human body:

A. for use in the cure, diagnosis, mitigation, prevention or treatment of disease, injury or sickness in human beings;



B. to affect any function or structure of the human body; or

## Definitions

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

*Drug (continued)*

C. that is recognized as such in the official:

1. *Homeopathic Pharmacopoeia*;
2. *National Formulary*;
3. *United States Pharmacopoeia*; or
4. supplements to any of these.

*Employee*

**Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

*Healthcare Service*

**Healthcare service** means any:

- cosmetic service, advice, instruction or treatment;
- dental, medical, nursing, physiotherapy, surgical or x-ray service, advice, instruction or treatment;
- handling or treatment of dead bodies, including autopsies, organ donations or other procedures;
- health or therapeutic service, advice, instruction or treatment; or
- related dispensing or furnishing of any beverages or food, or any **life science product** or other dental, medical or surgical appliances or supplies.

*Human Clinical Trial*

**Human clinical trial**:

A. means testing of material upon or within human beings to establish the effectiveness or safety of such material.

B. includes:

1. the providing of the information necessary to obtain the informed consent of human beings to participate in such testing; and
2. other activities in connection with the testing.

*Human Clinical Trial Contractor*

**Human clinical trial contractor** means a person or organization engaged to provide service, advice or instruction in connection with:

A. 1. clinical;

2. laboratory; or

3. research;

testing activities, within the scope of and in accordance with the applicable written protocol; or

B. the planning, monitoring or review;

of a **human clinical trial**.



## Definitions (continued)

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

### Impaired Property

**Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

- it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or
- you have failed to fulfill the terms or conditions of a contract or agreement;

if such property can be restored to use by:

- the repair, replacement, adjustment or removal of **your product** or **your work**; or
- your fulfilling the terms or conditions of the contract or agreement.

### Information And Network Technology Product

**Information and network technology product** means:

A. communication, computer, electronic, Internet, information, network or website:

1. equipment or parts; or
2. programs or systems; and

B. software, data or other information that is in electronic form.

### Information And Network Technology Service

**Information and network technology service** means analysis, design, integration, management, maintenance, processing, programming, repair or support services in connection with an **information and network technology product**.

### Institutional Review Board

**Institutional review board** means:

- a board, committee, group or similar organization; or
- an ethics committee;

designated, directed or requested by an institution or other person or organization to review a **human clinical trial**, including any:

- approval; or
- periodic review;

of any such **human clinical trial**.

### Insured

**Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured section of this contract.



**Definitions** *(continued)*

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

*Insured Contract*

**Insured contract**:

A. means:

1. a lease of premises;
2. a sidetrack agreement;
3. an easement or license agreement;
4. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
5. an elevator maintenance agreement; or
6. any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for such municipality) in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization.

B. does not include that part of any contract or agreement that indemnifies an architect, engineer or surveyor for damages arising out of:

1. preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, designs or specifications; or
2. giving directions or instructions, or failing to give them.

*Intellectual Property Law Or Right*

**Intellectual property law or right** means any:

- certification mark, copyright, patent or trademark (including collective or service marks);
- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;
- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or
- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

*Leased Worker*

**Leased worker** means a person leased to a party by a labor leasing firm, in a contract or agreement between such party and the labor leasing firm, to perform duties related to the conduct of the party's business. **Leased worker** does not include a **temporary worker**.

*Life Science Product*

**Life science product** means a **cosmetic**, **dietary supplement**, **drug** or **medical device**.

*Life Science Product Sales Contractor*

**Life science product sales contractor** means a person or organization engaged to provide service, advice or instruction in connection with the dispensing, distribution, furnishing or sale of a **life science product**, other than in connection with a **human clinical trial**.



## Definitions (continued)

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

### Life Science Product Service

**Life science product service** means:

- clinical;
- design or development review;
- laboratory; or
- research;

service, advice or instruction in connection with a **life science product**.

### Life Science Product Service Contractor

**Life science product service contractor** means a person or organization engaged to provide **life science product service**, other than in connection with a **human clinical trial**.

### Loading Or Unloading

**Loading or unloading**:

A. means the handling of property:

1. after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto** or watercraft;
2. while it is in or on an aircraft, **auto** or watercraft; or
3. while it is being moved from an aircraft, **auto** or watercraft to the place where it is finally delivered.

B. does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto** or watercraft.

### Medical Device

**Medical device** means an apparatus, contrivance, implant, implement, instrument, in vitro reagent, machine or other similar or related article, including an accessory, component or part, that is:

A. intended for use in the cure, diagnosis, mitigation, prevention or treatment of disease, injury or sickness in human beings;

B. intended to affect any function or structure of the human body; or

C. recognized as such in the official:

1. National Formulary;
2. United States Pharmacopoeia; or
3. supplements to any of these;

which does not achieve any of its primary intended purposes through chemical action upon or within the human body and which is not dependent upon being metabolized for the achievement of any of its primary intended purposes.



***Definitions***
*(continued)*

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

*Medical Expenses*

**Medical expenses** means reasonable expenses for necessary:

- first aid administered at the time of an accident;
- medical, surgical, x-ray and dental services, including prosthetic devices; and
- ambulance, hospital, professional nursing and funeral services.

*Mobile Equipment*

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

A. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B. vehicles maintained for use solely on premises owned by or rented to you;

C. vehicles that travel on crawler treads;

D. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

1. power cranes, shovels, loaders, diggers or drills; or
2. road construction or resurfacing equipment such as graders, scrapers or rollers;

E. vehicles not described in subparagraphs A., B., C. or D. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

1. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
2. cherry pickers and similar devices used to raise or lower workers; and

F. vehicles not described in subparagraphs A., B., C. or D. above maintained primarily for purposes other than the transportation of persons or cargo.

**Mobile equipment** does not include self-propelled vehicles with the following types of permanently attached equipment, and such vehicles will be considered **autos**:

1. equipment designed primarily for:
   a. snow removal;
   b. road maintenance, but not construction or resurfacing; or
   c. street cleaning;
2. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
3. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.



***Definitions*** *(continued)*

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:

*Nuclear Facility*

**Nuclear facility** means any:

A. **nuclear reactor**;

B. equipment or device designed or used for:

1. separating the isotopes of plutonium or uranium;
2. processing or utilizing **nuclear spent fuel**; or
3. handling, processing or packaging **nuclear waste**;

C. equipment or device used for the processing, fabricating or alloying of **nuclear material**, if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than:

1. 25 grams of plutonium or uranium 233, or any combination thereof; or
2. 250 grams of uranium 235; or

D. structure, basin, excavation, premises or place prepared or used for the storage or disposal of **nuclear waste**;

and includes the site on which any of the foregoing is located; all operations conducted on such site and all premises used for such operations.

*Nuclear Hazardous Properties*

**Nuclear hazardous properties** includes radioactive, toxic or explosive properties.

*Nuclear Material*

**Nuclear material** means **by-product material**, **source material** or **special nuclear material**.

**By-product material**, **source material** and **special nuclear material** have the meanings given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof.

*Nuclear Property Damage*

**Nuclear property damage** includes all forms of radioactive contamination of property.

*Nuclear Reactor*

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

*Nuclear Spent Fuel*

**Nuclear spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

*Nuclear Waste*

**Nuclear waste** means any waste material:

- containing **nuclear material**, other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and



## Definitions

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

*Nuclear Waste (continued)*

- resulting from the operation by any person or organization of any **nuclear facility** described in subparagraphs A. or B. of the definition of **nuclear facility**.

*Occurrence*

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Officer*

**Officer** means a person holding any of the officer positions created by an organization's charter, constitution, by-laws or any other similar governing document.

*Pollutants*

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Prisoner*

**Prisoner** means a human being who is:

A. incarcerated:

1. while awaiting arraignment, trial or sentencing; or
2. having been sentenced;

pursuant to a civil or criminal statute; or

B. detained for drug detoxification, treatment of alcoholism or other purposes, pursuant to a civil or criminal statute which allows or provides for alternatives to incarceration.

*Products-Completed Operations Hazard*

**Products-completed operations hazard**:

A. includes all **bodily injury** and **property damage** taking place away from premises owned or occupied by or loaned or rented to you and arising out of **your product** or **your work**, except:

1. products that are still in your physical possession; or
2. work that has not yet been completed or abandoned.

**Your work** will be deemed completed when:

- all of the work called for in your contract or agreement has been completed.
- all of the work to be performed at the site has been completed, if your contract or agreement calls for work at more than one site.
- that part of the work completed at a site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.



CHUBB

# Products-Completed Operations Liability Claims-Made For Life Sciences

## Definitions

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:

*Products-Completed Operations Hazard (continued)*

B. does not include **bodily injury** or **property damage** arising out of:

1. the transportation of property, unless the injury or damage results from a condition in or on a vehicle not owned or operated by or loaned or rented to you and that condition was created by the **loading or unloading** of that vehicle by any **insured**; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

C. notwithstanding anything to the contrary set forth above, includes all **bodily injury** and **property damage** in connection with:

1. a **human clinical trial**, to which this insurance applies.

2. **your product** that is or was at any time loaned or rented to or located for the use of others, whether or not such product:

   a. has been sold; or

   b. is in your possession.

### Property Damage

**Property damage** means:

- physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
- loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

### Suit

**Suit** means a civil proceeding in which damages, to which this insurance applies, are sought. **Suit** includes an arbitration or other dispute resolution proceeding in which such damages are sought and to which the **insured** must submit or does submit with our consent.

### Temporary Worker

**Temporary worker** means a person who is furnished to a party to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

### Your Product

**Your product**:

A. means any:

1. goods or products (other than real property), including:

   a. **information and network technology products**; and

   b. **life science products**;

   manufactured, sold, handled, distributed or disposed of by:

   - you;
   - others trading under your name; or
   - a person or organization whose assets or business you have acquired;



## Definitions

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

*Your Product (continued)*

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products; and

3. vending machines and other property loaned or rented to or located for the use of others by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose assets or business you have acquired.

B. includes:

1. representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your product**; and

2. the providing of or failure to provide instructions or warnings.

*Your Work*

**Your work**:

A. means any:

1. work or operations, including **information and network technology services** and **life science product services**, performed by:

   a. you or on your behalf; or

   b. a person or organization whose assets or business you have acquired; and

2. materials, parts or equipment furnished in connection with such work or operations.

B. includes:

1. representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your work**; and

2. the providing of or failure to provide instructions or warnings.

LIABILITY ENDORSEMENTS

## *Liability Insurance Section*

## *Endorsements*

*Form 80-02-2899 (Ed. 4-94)* *Endorsements*





# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS CLAIMS MADE
PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

### Exclusion Endorsement

*Information Distribution Laws*

With respect to all coverages under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any actual or alleged violation of:

- the United States of America CAN-SPAM Act of 2003 or any law amendatory thereof;
- the United States of America Telephone Consumer Protection Act (TCPA) of 1991 or any law amendatory thereof; or
- any other ordinance, regulation or statute relating to communicating, distribution, publication, sending or transmitting of content, information or material.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger





## Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE
LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS CLAIMS MADE

### Conditions

Under Conditions, the provision titled Premium Audit is deleted and replaced by the following.

*Premium Audit*

We will compute all premiums for this insurance in accordance with our rules and rates. We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger





# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

Under Extended Reporting Periods, the provisions titled "When Extended Reporting Periods Apply," "How Extended Reporting Periods Apply," "Basic Extended Reporting Period" and "Supplemental Extended Reporting Period" are deleted and replaced in their entirety with the following:

### Extended Reporting Periods

*When Extended Reporting Periods Apply*

We will automatically provide a Basic Extended Reporting Period and, if you purchase it, a Supplemental Extended Reporting Period, if:

A. this insurance is canceled or not renewed; or

B. we renew or replace this insurance with other insurance that:

1. has a Retroactive Date later than the Retroactive Date shown in the Declarations for this insurance; or

2. does not apply on a claims-made basis.



## Extended Reporting Periods
*(continued)*

### How Extended Reporting Periods Apply

Extended Reporting Periods:

A. apply only to claims for damages for **bodily injury** or **property damage** that did not occur before the Retroactive Date shown in the Declarations or after the end of the policy period.

B. do not:

1. extend the policy period or change the scope of coverage provided;
2. reinstate or increase the Limits Of Insurance applicable to any claim to which this insurance applies, except as described in the Supplemental Extended Reporting Period provision below; or
3. apply to injury, damage, **occurrence**, claim, **suit** or other circumstance reported, in whole or in part, to us or any other insurer before the beginning of the applicable Extended Reporting Period.

C. may not be canceled once in effect.

### Basic Extended Reporting Period

A Basic Extended Reporting Period is automatically provided. This period begins with the end of the policy period and lasts no longer than:

A. five years with respect to claims first made against any **insured** resulting from **occurrences** reported to us, not later than 60 days after the end of the policy period, in accordance with paragraphs A. and B. of the condition titled Duties In The Event Of Occurrence, Offense, Claim Or Suit.

B. 60 days with respect to claims resulting from an **occurrence** not reported to us in accordance with subparagraph A. above.

Such claims will be deemed to have been made during the policy period.

The Basic Extended Reporting Period does not apply to any claim that is covered under any other insurance (including any subsequent insurance you purchase), or that would be covered, but for exhaustion of the amount of insurance otherwise applicable to such claim.

### Supplemental Extended Reporting Period

A Supplemental Extended Reporting Period is available, but only by an endorsement and for an additional premium, subject to the following provisions.

If purchased, this period begins with the end of the Basic Extended Reporting Period and lasts for an unlimited time.

If the Supplemental Extended Reporting Period Endorsement is purchased, if necessary, we will reinstate the Aggregate Limit, but only for claims made during the Extended Reporting Period. This separate Aggregate Limit shall be equal to 100 percent of the Aggregate Limit shown in the Declarations of this policy.

The separate aggregate Limit Of Insurance described above will not apply to any injury, damage, **occurrence**, claim, **suit** or other circumstance:

- **deemed known** before the beginning of Supplemental Extended Reporting Period, that could reasonably be expected to result in any payment under this insurance; or
- reported, in whole or in part, to us or any other insurer before the beginning of the Supplemental Extended Reporting Period.



# Liability Insurance

## Endorsement

*Effective Date* APRIL 10, 2007

*Policy Number* 7020-67-90 RBO

### Extended Reporting Periods

*Supplemental Extended Reporting Period (continued)*

Claims actually first made during this Supplemental Extended Reporting Period will be deemed to have been made during the policy period.

You must give us a written request to purchase a Supplemental Extended Reporting Period within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium for the Supplemental Extended Reporting Period Endorsement in accordance with our rules and rates. The additional premium will not exceed 200 percent of the annual premium for this insurance.

The Supplemental Extended Reporting Period Endorsement will set forth the terms and conditions, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded is excess over any other insurance in force after the Supplemental Extended Reporting Period begins.

Under Conditions, the following condition is added:

### Conditions

*Your Right To Claim Information*

If the first named **insured** elects to purchase a Supplemental Extended Reporting Period, the following shall apply:

Within 45 days after the mailing or delivery of the written request of the first named **insured**, we shall mail or deliver the following loss information covering the previous three-year period:

- aggregate information on total closed claims, including date and description of the **occurrence** and any paid losses;
- aggregate information on total open claims, including date and description of the **occurrence** and amounts of any payments; and
- information on notice of any **occurrence** including date and description of the **occurrence**.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values. You must not disclose this information to any claimant or any claimant's representative without our consent.



## Conditions

*Your Right To Claim Information (continued)*

We compile claim information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first named **insured**, we make no representations or warranties to **insureds**, insurers, or other to whom this information is furnished by or on behalf of any **insured**. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger



## Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Policy Exclusions, the following exclusion is added:

### Policy Exclusions

*Tobacco*

This insurance does not apply to:

- any liability arising out of the actual or alleged emergence, contraction, aggravation or exacerbation of any form of cancer, carcinoma, cancerous or precancerous condition, arteriosclerosis, heart disease or any other injury, sickness, disease, or condition of the human body as a result of the consumption or use of or exposure to the consumption or use of any tobacco products manufactured, sold, handled or distributed by, for, or on behalf of the Named **Insured**.
- the investigation or defense of any claim made, **suit** brought, or proceeding instituted against any **insured**; any cost, fine or penalty; or any other expenses for loss related to any of the above.

It is agreed that, with respect to this endorsement, the term "tobacco products" shall include:

- raw or cured tobacco;
- cigars;
- cigar wrappers;
- cigar filters;
- pipe tobacco;



## *Policy Exclusions*

*Tobacco (continued)*

- snuff or chewing tobacco;
- smokeless tobacco products;
- cigarettes;
- cigarette paper;
- cigarette filters;
- tobacco smoke or other gaseous or solid residues or by-products of tobacco use or consumption; or
- any chemical, mineral or other products sprayed on, applied to or customarily found within or used in conjunction with any tobacco product.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger



# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE
LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS CLAIMS MADE

Under Policy Exclusions, the following exclusion is added:

### Policy Exclusions

*Silicon*

A. This insurance does not apply to any loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **silicon**.

B. This insurance does not apply to any loss, cost or expense arising out of any:

1. demand, order, request or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **silicon**; or

2. claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **silicon**.

Under Definitions, the following definition is added:

### Definitions

*Silicon*

**Silicon** means the element silicon (including silica and other silicate compounds), including its presence or use in any alloy, by-product, compound or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.

*continued*



**Liability Endorsement**
*(continued)*

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger

*Liability Insurance* *Exclusion - Silicon* *last page*
*Form 80-02-6386 (Ed.10-02)* *Endorsement* *Page 2*

 CHUBB

# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS CLAIMS MADE
PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

A new section titled Terrorism Provisions is added to the end of this contract.

### Terrorism Provisions

*Cap On Certified Terrorism Losses*

With respect to any one, or more than one, **certified act of terrorism** under the **terrorism law**, we will not pay any amount for which we are not responsible pursuant to the terms of the **terrorism law** (including any subsequent action of Congress pursuant to the **terrorism law**) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

A new section titled Terrorism Definitions is added.

### Terrorism Definitions

*Certified Act Of Terrorism*

**Certified act of terrorism** means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act:

A. of terrorism, a violent act or an act that is dangerous to human life, property or infrastructure; and

B. that results in damage:

1. within the **United States**; or
2. outside of the **United States** in the case of:
   a. an air carrier or vessel as described in the **terrorism law**; or

continued

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

08CV4779
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER
BR

# Exhibit A
# Part 4

b. the premises of a mission of the United States of America,

which was committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to:

- coerce the civilian population; or
- influence the policy or affect the conduct of the Government,

of the **United States**.

**Certified act of terrorism** does not include an act that:

- is committed as part of the course of a war declared by the Congress of the **United States**; or
- does not result in property and casualty insurance losses that exceed $5 million in the aggregate.

*State*

**State** means any state of the United States of America, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands, and any territory or possession of the United States of America.

*Terrorism Law*

**Terrorism law** means the "Terrorism Risk Insurance Act of 2002" (Pub.L.107-297) of the United States of America.

*United States*

**United States** means:

- a **state**; and
- the territorial sea and the continental shelf of the United States of America, as described in the **terrorism law**.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*



# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

### Exclusion Endorsement

*Specific Goods Or Products (Including Medical Devices)*

With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any defect, deficiency, inadequacy or dangerous condition in, including the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of, any good or product (including a **medical device**) shown in the Schedule, by whatever name known.

**Exclusion Endorsement**
*(continued)*

*Schedule*

- Birth control or fertility goods or products
- Hormone replacement products
- Selective Serotonin Reuptake Inhibitor products (SSRI)
- Vaccines

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger



# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

### Exclusion Endorsement

*Specific Diseases*

With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any:

A. condition, disease or sickness shown in the Schedule, including any similar or other condition, disease, injury or sickness related thereto, by whatever name known;

B. causative agent of any condition, disease, injury or sickness described in subparagraph A. above, regardless of whether such agent gives rise to any such condition, disease, injury or sickness or any other condition, disease, injury or sickness, by whatever name known; or

C. actual or attempted counseling or testing for, or containing, detoxifying, mitigating, monitoring or neutralizing of, or responding to, or assessing the effects of any:

1. condition, disease, injury or sickness; or
2. causative agent;

described in subparagraph A. or B. above, including any:

- actual or attempted cure, diagnosis, prevention or treatment of any such condition, disease, injury or sickness;



**Exclusion Endorsement**

*Specific Diseases (continued)*

- actual or attempted cleaning-up, disposing, handling or removing of any such causative agent; or
- failure to perform any of the foregoing.

*Schedule*

- Acquired Immune Deficiency Syndrome (AIDS)
- Hepatitis
- Transmissible Spongiform Encephalopathy (TSE)

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger

CHUBB

# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

### Exclusion Endorsement

*Specific Materials Or Other Goods Or Products*

With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any defect, deficiency, inadequency or dangerous condition in, including the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of, any good or product:

A. shown in the Schedule, in any form, including its presence or use in any alloy, by-product, compound or other material or waste; or

B. that:

1. has the same chemical formulary as;
2. has a similar formulation, function or structure as; or
3. is a derivative of;

any good or product described in subparagraph A. above, by whatever name known.



***Exclusion Endorsement***
*(continued)*

*Schedule*

- Cisapride
- Dexfenfluramine
- Di – (2-ethylhexyl) Phthalate (DEHP)
- Diethylstibestrol (DES)
- Ephedra or Ephedrine
- Fenfluramine
- Isotretinoin
- Latex
- L-tryptophan
- Mercury
- Phentermine
- Phenylpropanolamine (PPA)
- Piper Methysticum (Kava)
- Silicone
- Thalidomide
- Thimerosal
- Troglitazone

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger



CHUBB

# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

### Exclusion Endorsement

*Healthcare Professional Service*

With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of the rendering of or failure to render any **healthcare service**, whether or not such service is ordinary to any **insured**'s profession and regardless of whether or not a claim or **suit** is brought by any client or any other person or organization.

This exclusion does not apply to:

- **bodily injury** caused by a defect, deficiency, inadequacy or dangerous condition in **your product**;
- **bodily injury** caused by cardiopulmonary resuscitation or other first aid services (other than in connection with a **human clinical trial**);
- **bodily injury** resulting from the service provided within the scope of and in accordance with the applicable written protocol of a **human clinical trial**; or



## Exclusion Endorsement

*Healthcare Professional Service (continued)*

- Medical Expenses Coverage;

to which this insurance applies.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger


CHUBB

## Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

### Exclusion Endorsement

*Unapproved Off-Label Promotion*

With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of the dissemination of information:

- by or on behalf of any **insured**; and
- in connection with any unapproved use of any **life science product**;

in violation of any law, regulation or order of any governmental authority.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger





CHUBB

# Product Withdrawal And Crisis Management Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

Under Coverages, the following coverages are added:

### Coverages

*Product Withdrawal Expenses For Life Science*

Subject to all the terms and conditions of this insurance, we will pay for **withdrawal expenses** incurred by the **insured** as a result of a **class 1 recall**, provided that:

- such expenses are directly related to such recall;
- the recall is first reported to us by the **insured** in writing during the policy period; and
- coverage for the **life science product** is included in the **products-completed operations hazard.**

All reports in connection with the same recall will be deemed to have been made at the time the first of those reports is made to us by any **insured** in writing.

We have no duty to investigate, defend or settle any claim, suit or other demand of any nature against any **insured** or any other person or organization.

We have no duty to investigate, defend or settle any claim, suit or other demand of any nature against any **insured** or any other person or organization.

No other obligation or liability to reimburse sums or perform acts or services is covered.



## *Coverages*
*(continued)*

*Crisis Management Service For Life Science*

Subject to all the terms and conditions of this insurance, we will pay reasonable and necessary expenses incurred by the **insured** for **crisis management service**, provided that:

- such service is directly related to a **class 1 recall**;
- such recall is first reported to us by the **insured** in writing during the policy period;
- coverage for the **life science product** is included in the **products-completed operations hazard**; and
- the services are for the sole purpose of advising the **insured** how to reduce potential economic harm to the **insured** by maintaining and restoring public confidence in the **insured** or the product.

All reports in connection with the same recall will be deemed to have been made at the time the first of those reports is made to us by any **insured** in writing.

We have no duty to investigate, defend or settle any claim, suit or other demand of any nature against any **insured** or any other person or organization.

No other obligation or liability to reimburse expenses or perform acts or services is covered.

Under Limits of Insurance, the following limit is added:

## *Limits Of Insurance*

*Product Withdrawal Expenses And Crisis Management Service Aggregate Limit*

The most we will pay for the sum of **withdrawal expense** and **crisis management service**, to which this insurance applies, is $25,000 in any one policy period.

The following section is added but only with respect to the coverages titled Product Withdrawal Expense For Life Science and Crisis Management Service For Life Science:

## *Product Withdrawal Expense And Crisis Management Service Exclusions*

*Banned Materials*

This insurance does not apply to any **withdrawal expenses** or **crisis management service** expenses in connection with goods or products that have been distributed after any governmental organization has banned such goods or products (or any container, ingredient or part thereof) or declared them unsafe.

*Known Defects*

This insurance does not apply to any **withdrawal expenses** or **crisis management service** expenses in connection with any **life science product** which has a defect if such defect was known, or should have been known, by any **insured** prior to the:

- effective date of this insurance; or



## Endorsement

*Effective Date* APRIL 10,.2007

*Policy Number* 7020-67-90 RBO

### Product Withdrawal Expense And Crisis Management Service Exclusions

*Known Defects (continued)*

- delivery of such **life science product** by any **insured** or any person or organization acting on any **insured**'s behalf.

*Waste Sites*

This insurance does not apply to any **withdrawal expenses** or **crisis management service** expenses in connection with goods or products located at any premises, site or location which is or was at any time used for the handling, storage, disposal, processing or treatment of waste.

*Willful Violation Of Law*

This insurance does not apply to any **withdrawal expenses** or **crisis management service** expenses in connection with any willful violation of any statute, regulation, ordinance or other law, or any governmental directive or order.

The following section is added but only with respect to the coverages titled Product Withdrawal Expenses For Life Science and Crisis Management Service For Life Science:

### Conditions

*Abandonment*

There can be no abandonment of property to us unless we specifically agree to such abandonment in writing.

*Duties In The Event Of A Class 1 Recall*

A. The **insured** must give us immediate written notice upon discovery, or upon notification by a governmental organization, that a **life science product,** to which this insurance applies, is or may become the subject of a **class 1 recall**.

B. All **insureds** must immediately make every reasonable effort to stop any release, shipment, consignment or other distribution of any:

1. such **life science product**; and
2. kindred goods or products until it is determined that those goods or products are not subject to such recall.

C. As often as we reasonably require, any **insured** must:

1. permit us to inspect and make copies of records which support all **withdrawal expenses** or **crisis management service** expenses claimed.
2. cooperate with us in the investigation or settlement of any claim.



## Conditions

*Duties In The Event Of A Class 1 Recall (continued)*

3. permit us to examine any person under oath, outside the presence of any other person and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including any **insured**'s books and records. In the event of an examination, answers of the person we examine must be signed.

D. Within 90 days after any **insured**'s report of a **class 1 recall** to us, the **insured** must provide to us a sworn written statement containing the following information:

1. copy of any written notification from a governmental organization directing that the recall begin or documentation that supports your decision to voluntarily begin such recall;
2. a complete description and proof of the defect or situation, including the cause of the recall;
3. a listing that identifies the **life science product**, including batch or lot numbers, serial numbers and dates of manufacture; and
4. an itemized estimate of the **withdrawal expenses** and **crisis management service** expenses.

*Loss Determination*

In making any loss determination under this insurance we will utilize relevant sources of information, including:

- financial records and accounting procedures; and
- bills, invoices and other vouchers.

The amount of loss will be determined based on:

- **withdrawal expenses** and **crisis management service** expenses which exceed normal operating expenses; and
- other necessary expenses which reduce **withdrawal expenses** and **crisis management service** expenses that otherwise would have been incurred.

We will deduct from the total of such expenses the salvage value that remains of any property bought for temporary use in connection with the **class 1 recall** of a **life science product**.

*Loss Payment*

We will reimburse the **insured** for covered **withdrawal expenses** and **crisis management service** expenses within 30 days after we received the sworn written statement, as described under the condition titled Duties In The Event Of A Class 1 Recall, if all **insureds** have complied with all of the terms of this insurance, and we have reached agreement on the amount of loss.

*No Benefit To Others*

This insurance is for the benefit of **insureds**. No other person or organization may benefit directly from it.

*Other Insurance For Product Withdrawal And Crisis Management Expenses*

If any **insured** has **other insurance** covering loss which is also covered by this insurance, we will only reimburse the **insured** for the amount of loss, to which this insurance applies, in excess of the amount due from that **other insurance**, whether collectible or not.



CHUBB

# *Product Withdrawal And Crisis Management Insurance*

## *Endorsement*

*Effective Date* APRIL 10, 2007

*Policy Number* 7020-67-90 RBO

## Conditions
*(continued)*

*Reduction Of Expenses*

All **insureds** must take all reasonable steps to minimize **withdrawal expenses** and **crisis management service** expenses.

The following section is added but only with respect to the coverages titled Product Withdrawal Expenses For Life Science and Crisis Management Service For Life Science:

## Definitions

*Class 1 Recall*

**Class 1 recall** means actions taken by, on behalf of, or at the direction of the **insured** to remove a **life science product** from the market because of a situation in which there is a reasonable probability that the use of, or exposure to, such product will cause serious adverse health consequences or death.

Such recall may be:

- a voluntary action initiated or requested by, or on behalf of, any **insured**; or
- required by any statute, regulation, ordinance, law or directive of any governmental organization.

*Crisis Management Service*

**Crisis management service** means professional service or advice provided by a crisis management service firm in connection with a **class 1 recall**.

*Other Insurance*

**Other insurance** means a policy of insurance or any type of self-insurance or other mechanism by which an **insured** arranges for funding of loss.

*Withdrawal Expenses*

**Withdrawal expenses** means that part of the following expenses which are reasonable, necessary and devoted exclusively to activities directly related to a **class 1 recall** of a **life science product**, to which this insurance applies:

- broadcast, electronic, printed, telecast and telephonic announcements, communications and notices;
- transportation and storage of such products or replacements thereof; or
- destruction and disposal of the products,

including, but solely in connection with the foregoing:

- overtime remuneration, transportation and accommodation of persons other than the **insured**'s regular employees.

## Definitions

*Withdrawal Expenses (continued)*

- procurement, remuneration, transportation and accommodation of persons other than the **insured**'s regular employees.

**Withdrawal expenses** does not include any:

- cost or expense to correct any defect;
- cost or expense of inspecting, adjusting or repairing any **life science product** or any other property;
- cost or expense of removing any such product from any other goods or products or from any other property;
- cost of the product, replacements thereof or of any other property;
- cost or expense of installing any replacement goods, products or other property;
- refund to any person or organization, including any cost or expense in connection with such refund; or
- cost or expense in connection with the realization, maintenance or recovery of market share, goodwill, reputation, revenue or profit.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger





# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The section of this contract titled Limits Of Insurance is deleted and replaced by the following:

### Limits Of Insurance - Claim Adjustment Expenses Reducing Limits

The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

- **insureds**;
- claims made or **suits** brought; or
- persons or organizations making claims or bringing **suits**.

The Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

### Products-Completed Operations Aggregate Limit

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for the sum of:

- damages for **bodily injury** and **property damage** included in the **products-completed operations hazard**; and



## *Limits Of Insurance - Claim Adjustment Expenses Reducing Limits*

*Products-Completed Operations Aggregate Limit (continued)*

- related **claim adjustment expenses** described as reducing the Limits Of Insurance in the provision titled Payments That Reduce The Limits Of Insurance.

*Human Clinical Trial Medical Expenses Aggregate Limit*

Subject to the Human Clinical Trial Medical Expenses Each Person Limit, the Human Clinical Trial Medical Expenses Aggregate Limit is the most we will pay for the sum of:

- **medical expenses**, under Human Clinical Trial Medical Expenses Coverage; and
- related **claim adjustment expenses** described as reducing the Limits Of Insurance in the provision titled Payments That Reduce The Limits Of Insurance.

*Each Occurrence Limit*

The Each Occurrence Limit is the most we will pay for the sum of:

- damages for **bodily injury** and **property damage**;
- **medical expenses**; and
- related **claim adjustment expenses** described as reducing the Limits Of Insurance in the provision titled Payments That Reduce The Limits Of Insurance;

arising out of any one **occurrence**.

Any such sums we pay will reduce the amount of the applicable aggregate limit available for any other payment.

If the applicable aggregate limit has been reduced to an amount that is less than the Each Occurrence Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.

*Human Clinical Trial Medical Expenses Each Person Limit*

Subject to the Each Occurrence Limit, the Human Clinical Trial Medical Expenses Each Person Limit is the most we will pay for the sum of:

- **medical expenses**, under Human Clinical Trial Medical Expenses Coverage, for **bodily injury** sustained by any one person; and
- related **claim adjustment expenses** described as reducing the Limits Of Insurance in the provision titled Payments That Reduce The Limits Of Insurance.

Any such sums we pay will reduce the amount of the applicable aggregate limit available for any other payment.

If the applicable aggregate limit has been reduced to an amount that is less than the Medical Expenses Each Person Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.



Liability Insurance

## Endorsement

*Effective Date* APRIL 10, 2007

*Policy Number* 7020-67-90 RBO

### Limits Of Insurance - Claim Adjustment Expenses Reducing Limits
*(continued)*

*Payments That Reduce The Limits Of Insurance*

A. Any damages or **medical expenses** we pay will reduce the Limits Of Insurance.

B. Any **claim adjustment expenses** we pay will reduce the Limits Of Insurance.

C. Except for payments described as reducing the Limits Of Insurance in paragraphs A. and B. above, payments we make under the Supplementary Payments section of this contract will not reduce the Limits Of Insurance.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger

*Liability Insurance* *Defense Within The Limits Of Insurance For PCO Contract – Life Science* *last page*
*Form 80-02-6430 (Ed. 8-04)* *Endorsement* *Page 3*



# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

Under Coverages, Bodily Injury And Property Damage Products-Completed Operations Liability Coverage Claims-Made, paragraph B. is deleted and replaced by the following:

### Coverages

*Bodily Injury And Property Damage Products-Completed Operations Liability Coverage Claims-Made*

B. This coverage applies only if:

1. such **bodily injury** or **property damage** did not occur before the Retroactive Date shown in the Declarations or after, as applicable, the later of the end of:

   a. the policy period; or

   b. any applicable Extended Occurrence Period we provide, in accordance with the provisions of the condition titled Notice Of Circumstances (Including Extended Occurrence Period/Your Product); and

2. a claim by a person or organization for damages for the **bodily injury** or **property damage** is:

   a. first made against any **insured** during:

      i. the policy period; or

      ii. any Extended Reporting Period we provide, as described in the Extended Reporting Periods section of this contract; or



## Coverages

*Bodily Injury And Property Damage Products-Completed Operations Liability Coverage Claims-Made (continued)*

b. made in accordance with the provisions of the condition titled Notice Of Circumstances (Including Extended Occurrence Period/Your Product).

A new section, titled Extended Occurrence Period/Your Products, is added immediately after the section titled Extended Reported Periods:

### Extended Occurrence Period/Your Products

Coverage for **bodily injury** or **property damage** that occurs during an Extended Occurrence Period is available, but only by an applicable Extended Occurrence Period Endorsement and for an Additional Premium, subject to the following provisions.

If purchased, such coverage begins with the end of the policy period and lasts no longer than the time shown in the Schedule.

You must give us a written request, during the policy period, to purchase the coverage. The coverage will not take effect unless such Additional Premium is paid promptly when due.

We will determine the Additional Premium in accordance with our rules and rates. The Additional Premium will not exceed the amount shown in the Schedule.

Such an endorsement will set forth terms and conditions, not inconsistent with this condition, including provisions to the effect that coverage under an Extended Occurrence Period:

A. applies only to **bodily injury** and **property damage** included in the **products-completed operations** hazard, to which this insurance applies, caused by **your product** described in the applicable Extended Occurrence Period Endorsement.

B. does not apply to any injury or damage arising out of any goods or products disposed of, distributed, handled, manufactured or sold:

   1. after any governmental or regulatory authority has declared such goods or products unsafe;

   2. by any organization any **insured** acquires, if such acquisition is executed after the beginning of the policy period; or

   3. after the Extended Occurrence period begins.

C. as set forth herein, may not be cancelled once in effect.

D. is excess over any other insurance in force after the Extended Occurrence Period begins.

E. does not reinstate or increase the Limits Of Insurance.

The applicable Limits Of Insurance will apply to the last preceding period of the policy period and the Extended Occurrence Period, combined, and not separately to any portion (whether annual or otherwise) thereof.



CHUBB

## Liability Insurance

## Endorsement

*Effective Date* APRIL 10, 2007

*Policy Number* 7020-67-90 RBO

Under Conditions, the condition titled Notice Of Circumstances is deleted and replaced by the following:

### Conditions

*Notice Of Circumstances (Including Extended Occurrence Period/Your Products)*

The following provisions apply only to coverage referred to as Claims-Made in the title of such coverage.

A. If, prior to the end of the policy period, you become aware of a circumstance that has resulted or could result in injury or damage to which this insurance applies, a claim for damages for such injury or damage will be deemed to have been made during the policy period, provided:

1. you see to it that we receive written notice of such circumstance as soon as practicable and during the policy period; and

2. such claim is actually first made against any **insured** before the later of the end of:

a. the policy period of this insurance;

b. the policy period of a subsequent, continuous renewal or replacement of this insurance, that is issued to you by us or by an affiliate of ours; or

c. any extended reporting period exercised under the insurance described in subparagraph A.2.a. or A.2.b. above.

Notification must be in accordance with paragraphs A. and B. of the condition titled Duties In The Event Of Occurrence, Claim Or Suit.

B. Coverage hereunder:

1. applies only to claims for damages for:

a. **bodily injury** or **property damage** that did not occur before the Retroactive Date shown in the Declarations or after, as applicable, the later end of:

i. the policy period; or

ii. any applicable Extended Occurrence Period we provide (such injury or damage that actually occurs during such Extended Occurrence Period, shown in the Schedule, will be deemed to have occurred before the end of the policy period).

2. does not:

a. extend the policy period or increase the scope of coverage provided;

b. reinstate or increase the Limits Of Insurance; or



08CV4779
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER
BR

# Exhibit A
# Part 5

## Conditions

*Notice Of Circumstances (Including Extended Occurrence Period/Your Products) (continued)*

c. apply to any injury, damage, **occurrence**, claim, **suit** or other circumstance reported, in whole or in part, to us or any other insurer before the beginning of the policy period.

**SCHEDULE**

| | |
|---|---|
| EXTENDED OCCURRENCE PERIOD | One year |
| ADDITIONAL PREMIUM | Will not exceed 200 percent of the annual premium for this insurance |

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger



CHUBB

## Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

**Exclusion Endorsement**

*Human Clinical Trial Medical Expenses Coverage*

Under Coverages, the provision titled Human Clinical Trial Medical Expenses Coverage is deleted. It is agreed that all references in the contract to **medical expenses** are deleted and no coverage is provided.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger



CHUBB

# Liability Insurance

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

Under Limits Of Insurance, the following provision is added:

### Limits Of Insurance

*Non Accumulation Of Limits Of Insurance*

This policy is one of several policies issued by us or other member insurers of the Chubb Group of Insurance Companies to you, and/or your subsidiary companies, to conform with various state jurisdictional requirements. It is agreed that any claim or **suit** which could be covered under two or more of these policies will be covered under only the policy with the highest limit of insurance available or, if the limits are the same, under only one of the policies. Regardless of the number of claims or **suits**, the number of policies, or the number of additional **insureds** which could be involved, the combined total annual aggregate limits of liability under all such policies to which this endorsement is attached will not exceed the aggregates stated below for any one policy year:

General Aggregate Limit

Products-Completed Operations Aggregate Limit

Advertising Injury And Personal Injury Aggregate Limit

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger





CHUBB

# *Liability Insurance*

## *Endorsement*

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS CLAIMS MADE

PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE

Under Limits Of Insurance, the following provision is added:

### Limits Of Insurance

*Deductible*

Our obligation to pay damages, defense costs and other Supplementary Payments on behalf of the **insured** for **bodily injury** and **property damage** applies only to the amount of damages, defense costs and other Supplementary Payments in excess of the deductible amounts shown in the Declarations as applicable to such coverages.

The deductible amounts shown in the Declarations apply as follows:

Per Occurrence basis – the deductible amount applies to all damages, defense costs and other Supplementary Payments because of:

- all **bodily injury** or **property damage** as the result of any one **occurrence**, regardless of the number of persons or organizations who sustain damages because of that **occurrence**; or
- all **bodily injury** and **property damage** as a result of one **occurrence**, regardless of the number of persons or organizations who sustain damages because of that **occurrence**.

Deductible payments by the **insured** will not reduce the Limits Of Insurance.



## Limits Of Insurance

*Deductible (continued)*

We may pay any part or all of the deductible amount to settle any claim or **suit** and then bill you for reimbursement of any such payment that we have made. Within thirty (30) days of our billing, you shall reimburse us in full for any payments that we have made which are below the deductible amount. A failure to reimburse us shall be equivalent to non-payment of premium for purpose of cancellation of this policy by us.

Under Definitions, the following is added:

## Definitions

*Batch Or Lot*

**Batch or lot** means that quantity of a product produced within a single manufacturing cycle and specifically marked with a date, distinctive combination of letters, numbers or symbols, or any combination of any of the foregoing, from which it can be determined that an individual item of the product was produced during that cycle. **Batch or lot** includes:

- the handling, selling, distribution, sharing or disposing of such quantity of products; and
- the providing of or failure to provide warnings or instructions for such quantity of products.

Under Definitions, the definition for Occurrence is deleted and replaced with the following:

## Definitions

*Occurrence*

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

All **bodily injury** or **property damage** arising out of a **batch or lot** shall be deemed to be one **occurrence**.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger

COMMON POLICY CONDITIONS

# Common Policy Conditions Section





## Policy Conditions

### Schedule of Forms

| | |
|---|---|
| Policy Period | APRIL 10, 2007 TO APRIL 10, 2008 |
| Effective Date | APRIL 10, 2007 |
| Policy Number | 7020-67-90 RBO |
| Insured | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | APRIL 19, 2007 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-9090 | 6-05 | COMMON POLICY CONDITIONS | 04/10/07 | 04/19/07 |
| 80-02-9736 | 12-95 | NO.CAROLINA MANDATORY - CANCELLATION TERMS | 04/10/07 | 04/19/07 |

last page





# Common Policy Conditions

## Contract

**Conditions**

The following Conditions are included under each part of the policy, unless stated otherwise.

*Audit Of Books And Records*

We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.

*Cancellation*

The first named insured may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect.

We may cancel this policy or any of its individual coverages at any time by sending to the first named insured a notice 60 days (20 days in the event of non-payment of premium) in advance of the cancellation date. Our notice of cancellation will be mailed to the first named insured's last known address, and will indicate the date on which coverage is terminated. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable.

*Changes*

This policy can only be changed by a written endorsement that becomes part of this policy. The endorsement must be signed by one of our authorized representatives.

*Compliance By Insureds*

We have no duty to provide coverage under this policy unless you and any other involved insured have fully complied with all of the terms and conditions of the policy.

*Compliance With Applicable Trade Sanctions*

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

*Conformance*

Any terms of this insurance which are in conflict with the applicable statutes of the State in which this policy is issued are amended to conform to such statutes.

*First Named Insured*

The person or organization first named in the Declarations is primarily responsible for payment of all premiums. The first named insured will act on behalf of all other named insureds for the giving and receiving of notice of cancellation or nonrenewal and the receiving of any return premiums that become payable under this policy.

*Inspections And Surveys*

We may:

- make inspections and surveys at any time;
- give you reports on the conditions we find; and
- recommend changes.



## Conditions

*Inspections And Surveys (continued)*

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

- are safe or healthful; or
- comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations for us.

*Titles Of Paragraphs*

The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

*Transfer Of Rights And Duties*

Your rights and duties under this insurance may not be transferred without our written consent. However, if you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative, or to anyone having temporary custody of your property until your legal representative has been appointed.

*When We Do Not Renew*

If we decide not to renew this policy, we will mail or deliver to the first named insured's last known address, written notice of the nonrenewal not less than 60 days before the expiration date. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

COMMON POLICY ENDORSEMENTS

## Common Policy Conditions Section

## Endorsements



# Policy Conditions

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | APRIL 10, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | APRIL 19, 2007 |

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

The following changes are made as respects exposures in the state of North Carolina.

Under Conditions, the provisions titled Cancellation and When We Do Not Renew are deleted and replaced by the following:

### Conditions

*Cancellation Or Nonrenewal*

*CANCELLATION OF POLICIES IN EFFECT LESS THAN 60 DAYS*

A. If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:

1. 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

2. 30 days before the effective date of cancellation if we cancel for any other reason.

*CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE*

B. If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel this policy prior to the expiration of the policy term or anniversary date stated in the policy only for one or more of the following reasons:

1. nonpayment of premium;

2. an act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;



## Conditions

*Cancellation Or Nonrenewal (continued)*

3. increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;
4. substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;
5. a fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;
6. willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;
7. loss of facultative reinsurance. or loss of substantial changes in applicable reinsurance as provided G.S. 58-41-30;
8. conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;
9. a determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or
10. if you fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first named insured at least:

- 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or
- 30 days before the effective date of cancellation if we cancel for any other reason.

Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

*NONRENEWAL*

A. If we elect not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

   1. expiration of the policy if this policy has been written for one year or less; or
   2. anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

B. We need not mail or deliver the notice of nonrenewal if you have:

   1. insured property covered under this policy, under any other insurance policy;
   2. accepted replacement coverage; or
   3. requested or agreed to nonrenewal of this policy.

C. If notice is mailed, proof of mailing will be sufficient proof of notice.

D. The written notice of cancellation or nonrenewal will:



CHUBB

# Policy Conditions

## Endorsement

*Effective Date* APRIL 10, 2007

*Policy Number* 7020-67-90 RBO

## Conditions

*Cancellation Or Nonrenewal (continued)*

1. be mailed or delivered to the first named insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

2. state the reason or reasons for cancellation or nonrenewal.

All other terms and conditions remain unchanged.

*Authorized Representative* Robert Hamburger



# INSURED'S COPY

AM2PAT, INC. DBA SALIENT HEALTH CARE, IN
C.
455 WEST DEPOT STREET

ANGIER, NC
27501

**PRODUCT:** CUSTOMARQCLASSIC 2003

**POLICY NO:** 000070206790

**TRANSACTION:** ENDORSEMENT



AM2PAT, INC. DBA SALIENT HEALTH CARE, IN
C.
455 WEST DEPOT STREET

ANGIER, NC
27501



CHUBB

**Customarq Series**
**Life Sciences Insurance Program**

## Premium Bill

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | JUNE 4, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JUNE 22, 2007 |

**Portion of total premium attributable for terrorism and statutory standard fire where applicable is $ 0.00**

PLEASE SEND PAYMENT TO AGENT OR BROKER.

In consideration of no additional premium charged,
it is hereby agreed the Policy is amended:
Amend the Mailing Address:
455 West Depot Street
Angier, NC 2750

| *Date Payment Due* | *Additional Premium* |
|---|---|
| JUNE 4, 2007 | $ 0.00 |
| *TOTAL* | $ 0.00 |

WHEN SENDING PAYMENT, PLEASE INDICATE POLICY NUMBER ON YOUR CHECK.

NOTE: PLEASE RETURN THIS BILL WITH PAYMENT AND INCLUDE ANY ADDITIONAL CHANGES.

Producer:
TRISURE CORPORATION
4325 LAKE BOONE TR #200
RALEIGH, NC 27607-0000





## Liability Insurance

### Schedule of Forms

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | JUNE 4, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JUNE 22, 2007 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-0010 | 4-94 | LIABILITY DECLARATIONS | 06/04/07 | 06/22/07 |
| 80-02-2085 | 8-04 | PRODUCTS/COMPLETED OPERATIONS-CM LIFE SCIENCE | 04/10/07 | 04/19/07 |
| 80-02-2285 | 4-01 | DED-PER OCC INCL SUPP PAY-BATCH OR LOT (PCO) | 04/10/07 | 04/19/07 |
| 80-02-2324 | 4-01 | NON ACCUMULATION OF LIMITS OF INSURANCE | 04/10/07 | 04/19/07 |
| 80-02-2445 | 7-98 | TOBACCO EXCLUSION ENDORSEMENT | 04/10/07 | 04/19/07 |
| 80-02-6386 | 10-02 | EXCLUSION - SILICON | 04/10/07 | 04/19/07 |
| 80-02-6403 | 1-03 | CAP ON CERTIFIED TERRORISM LOSSES | 04/10/07 | 04/19/07 |
| 80-02-6411 | 8-04 | LS-EXCL-SPECIFIC GOODS PRODUCTS INCL MED DEV | 04/10/07 | 04/19/07 |
| 80-02-6412 | 8-04 | LS-EXCL-SPECIFIC DISEASES | 04/10/07 | 04/19/07 |
| 80-02-6413 | 8-04 | LS-EXCL-SPECIFIC MATERIALS GOODS PRODUCTS | 04/10/07 | 04/19/07 |
| 80-02-6419 | 8-04 | LS-EXCL-HEALTHCARE PROFESSIONAL SERVICE | 04/10/07 | 04/19/07 |
| 80-02-6424 | 8-04 | LS-EXCL-UNAPPROVED OFF-LABEL PROMOTION | 04/10/07 | 04/19/07 |
| 80-02-6427 | 8-04 | LS-PRODUCT WITHDRAWAL AND CRISIS MGMT EXP | 04/10/07 | 04/19/07 |
| 80-02-6430 | 8-04 | LS-DEFENSE WITHIN THE LIMITS-PCO CONTRACT | 04/10/07 | 04/19/07 |
| 80-02-6443 | 8-04 | LS - EXTENDED OCCURRENCE PERIOD OPTION - PCO | 04/10/07 | 04/19/07 |
| 80-02-6458 | 8-04 | LS-EXCL-HUMAN CLINICAL TRIAL MEDICAL EXPENSES | 04/10/07 | 04/19/07 |
| 80-02-6528 | 4-05 | EXCLUSION - INFORMATION DISTRIBUTION LAWS | 04/10/07 | 04/19/07 |
| 80-02-6541 | 3-05 | CONDITION - PREMIUM AUDIT | 04/10/07 | 04/19/07 |
| 80-02-6849 | 8-04 | LS-NC-ERP/GL (INCLUDING PCO CLAIMS MADE)/PCO | 04/10/07 | 04/19/07 |

*last page*



# Liability Insurance

## Declarations

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

AM2PAT, INC. DBA SALIENT HEALTH CARE, IN
C.
455 WEST DEPOT STREET
ANGIER, NC 27501

*Policy Number* 7020-67-90 RBO

*Effective Date* JUNE 4, 2007

*Issued by the stock insurance company indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Incorporated under the laws of INDIANA*

*Producer No.* 0026813

*Producer* TRISURE CORPORATION
4325 LAKE BOONE TR #200
RALEIGH, NC 27607-0000

"TRUE AND CERTIFIED COPY"

## Policy Period

From: APRIL 10, 2007 To: APRIL 10, 2008
12:01 A.M. standard time at the Named Insured's mailing address shown above.

| Liability Coverage | Limit Of Insurance | |
|---|---|---|
| PRODUCTS/COMPLETED OPERATIONS - CLAIMS MADE | | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |
| EACH OCCURRENCE LIMIT | $ 2,000,000 | |
| BODILY INJURY AND PROPERTY DAMAGE DEDUCTIBLE PER OCCURRENCE | | $ 25,000 |
| RETROACTIVE DATE | | APRIL 10, 2005 |



## *Liability Coverage*
*(continued)*

**STATE: NORTH CAROLINA**

***LS PRODUCTS/COMP OPS***

| | |
|---|---|
| CLASSIFICATION CODE NUMBER: | 00419 |
| CLASSIFICATION DESCRIPTION: | |
| LS DEVICE MFG. - PROD/COMP. OPS - MODERATE HAZARD | |
| PREMIUM BASIS: | |
| GROSS SALES: | $4,000,000 |
| RATE: | 5.031 |



CHUBB

# Policy Conditions

## Schedule of Forms

| | |
|---|---|
| *Policy Period* | APRIL 10, 2007 TO APRIL 10, 2008 |
| *Effective Date* | JUNE 4, 2007 |
| *Policy Number* | 7020-67-90 RBO |
| *Insured* | AM2PAT, INC. DBA SALIENT HEALTH CARE, IN C. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JUNE 22, 2007 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-9090 | 6-05 | COMMON POLICY CONDITIONS | 04/10/07 | 04/19/07 |
| 80-02-9736 | 12-95 | NO.CAROLINA MANDATORY - CANCELLATION TERMS | 04/10/07 | 04/19/07 |

*last page*